WILLIAM A. ROBERTS *vs.* FIRST NATIONAL BANK OF FARGO.

Opinion filed June 15, 1899.

**Part Payment of Past Due Obligation Not Good Consideration for Contract.**

> Part payment of an existing indebtedness which is due is not consideration for a new promise. Accordingly, *held*, that the promise of a creditor to his debtor, which is made at the time of a partial payment by the latter, that he will "take care of" a certain judgment against the latter in favor of a third person, is without consideration, so far as it is dependent upon such payment.

**What Constitutes Consideration for Promise.**

> The consideration for a promise may be found in some prejudice either suffered or agreed to be suffered by the promisee, other than such as he is at the time lawfully bound to suffer. *Held*, that the facts stated in the opinion do not show that the promisee either suffered or agreed to suffer any prejudice, and hence the promise, which has no other support, is therefore without consideration.

**Transfer of Chose in Action.**

> A chose in action may be transferred either by parol or by written assignment.

**Conflict in Evidence is for Jury to Settle.**

> It appears that on January 30, 1896, one R. made a written assignment to the plaintiff of a money demand owned by her against the defendant bank; further, that prior thereto, and on January 25, 1896, the account was garnished by the intervener, who is her creditor. There is some evidence tending to show that she had assigned the account to plaintiff by parol about a month prior to the written assignment. *Held*, that under this conflict of evidence the material inquiry as to when the account was transferred so as to vest title thereto in the plaintiff was entirely a question for the jury.

**Erroneous Instruction.**

> The Court, in substance, instructed the jury that, if they found that at a time prior to the garnishment an oral agreement for the sale of the account to plaintiff was reached, then they must find for plaintiff. *Held*, that this instruction was erroneous, for the reason that it permitted the plaintiff to recover upon the account, as against the intervener's garnishment thereof, even though the title thereto may not have vested in plaintiff prior to such garnishment; further, in

not confining plaintiff's right to an actual purchase of the account, as distinguished from an agreement to purchase.

Appeal from District Court, Cass County; *Pollock, J.*

Action by William A. Roberts against the First National Bank of Fargo. The Bemis Bros. Bag Company intervened. Judgment for plaintiff. From an order granting a new trial, he appeals.

Affirmed.

*Ball, Watson & Maclay,* for appellant.

While Matilda M. Roberts was bound to pay the indebtedness due to the bank she was not bound to mortgage her property for the purpose of raising the money. The detriment suffered by her from the giving of such mortgage furnished sufficient consideration to support the bank's promise to indemnify her against the Inman judgment. *McCraith* v. *Bank,* 10 N. E. Rep. 862; § § 3871-3872 Rev. Codes. The promise to take care of a liability means that the promisor will save the other party harmless and free from responsibility or that the promisor will himself pay the claim. *Yale* v. *Watson,* 55 N. W. Rep. 957; *Dover Co.* v. *Noyes,* 24 N. E. Rep. 53. The promise of the bank to take care of the Inman judgment was not within the statute of frauds. Brandt on Suretyship, § 72; DeColyar on Guarantors, 110; 8 Am. & Eng. Enc. L. 676, notes 8 and 9. The parol assignment to plaintiff of Matilda M. Roberts' claim against the bank was valid as against the garnishing creditor, although no notice of the assignment was given the debtor. 4 Am. Dig. (Cent. Ed.) 1213-1298, 1317.

*Newman, Spalding & Stambaugh,* for respondent.

Payment of an existing indebtedness due, is not a valid consideration for any new contract between the debtor and creditor. Bish. on Conts. § § 48, 49 and 50. It was beyond the power of the bank to act as broker to procure or negotiate loans. *Farmers, etc. Bank* v. *Smith's Exrs.,* 40 U. S. App. 690; *Dresser* v. *Bank,* 42 N. E. Rep. 567; *First Nat. Bank* v. *Hoch,* 89 Pa. St. 324; *Weckler* v. *Bank,* 42 Md. 581; *Shinker* v. *Bank,* 22 Ohio St. 516; *Matthews* v. *Skinner,* 62 Mo. 329; *Wiley* v. *Bank,* 47 Vt. 546. The officers of a bank cannot compromise or discharge claims belonging to the bank without authority of the board of directors. *Hodges' Exrs.* v. *Bank,* 22 Gratt. 51; *Davis* v. *Randall,* 115 Mass. 547.; *Olney* v. *Chadsey,* 7 R. I. 224. Plaintiff's admissions against his interest must be taken as true. *Bullock* v. *Hooper,* 146 U. S. 368. By the original complaint, he averred the transfer to him of the Matilda M. Roberts' claim as of date January 30th, 1896. The amended complaint states an earlier date. The testimony shows that the statement in the original complaint was not made by mistake, therefore the first statement will be taken as true. *Elizabethport Mfg. Co.* v. *Campbell,* 13 Abb. Pr. 86-92.

YOUNG, J. At the trial of this action in the District Court the

jury returned a verdict for plaintiff for $3,842.29. The defendant and intervener made a motion for a new trial, which was granted. This appeal is from the order granting the new trial. Plaintiff is seeking to recover the balance of a debt originally owed by the defendant bank to his mother, Matilda M. Roberts, and assigned to him prior to the commencement of this action. The intervener, the Bemis Bros. Bag Company, is a creditor of Matilda M. Roberts, and it asserts a claim to such balance as may be due from the bank, basing its rights thereto upon a garnishment of the account which it claims to have made prior to the alleged assignment to plaintiff. The facts giving rise to the alleged indebtedness of the bank to Matilda M. Roberts may be stated as follows: Originally Matilda M. Roberts was indebted to the defendant bank in a large sum, upon certain promissory notes executed by her as maker. In addition she was liable to the bank as guarantor on three separate notes of other parties, which are named in the record as the Vidger & Huff, Foley, and Norcross notes, and which she had discounted at the bank. All of the foregoing indebtedness was secured by her mortgage upon property owned by her in Fargo, and known as the "Fargo Roller Mills." The defendant bank had instituted foreclosure proceedings to subject this property to the payment of the debt secured. Mrs. Roberts resisted the forclosure, and answered in the action. On July 25, 1890, a compromise settlement of the pending suit was made, which furnishes the cause of action which plaintiff sets up in his complaint. By the terms of this settlement, Mrs. Roberts was to withdraw her answer, and permit the bank to take judgment in the foreclosure action for the amount secured by the mortgage, which judgment amounted to $22,669.85; also, to give a quitclaim deed of the mill property to the bank, and surrender possession thereof to it immediately. There is practically no disagreement as to the foregoing facts, but it is the bank's contention that in addition thereto Mrs. Roberts was to get the Vidger & Huff, Foley and Norcross claims, which it then held with her guaranty, and which does not appear to have been released, in the form of new notes, guarantied as before, and deliver them to the bank in lieu of the old notes, and that this has not been done. It is conceded that the bank agreed to pay Mrs. Roberts the sum of $4,000 upon the performance by her of certain conditions, some of which we have mentioned, and a large portion of which it is beyond dispute that she kept. It appears that she withdrew the answer which had been interposed in the foreclosure proceedings; also, that she gave possession of the mill property to the defendant; further, that she prepared and executed a quitclaim deed, and offered to deliver it to defendant. It is conceded, also, that a portion of the $4,000 was paid to Mrs. Roberts, or to C. A. Roberts, her husband, for her, but the exact amount is in dispute. The motion for new trial was not addressed to the discretion of the Court, but was made entirely upon questions of law, and the order of the Court granting

the same must stand or fall according to the correctness of such determinations. Such reference to the facts as we make is only for the purpose of presenting the real questions before us.

In addition to other defenses,—including the interposition of the Vidger & Huff, Foley, and Norcross claims as offsets, to which reference has already been made,—defendant alleged, also, as an offset, that from and after April 22, 1893, it was the owner of a certain judgment rendered and entered against Matilda M. Roberts in favor of the Fargo Building Association on February 21, 1885, upon which there is claimed to be due the sum of $545.05, with 7 per cent. interest since April 27, 1885. This is known as the "Inman judgment." Plaintiff resists the allowance of this judgment as an offset upon the ground, as he asserts it, that the defendant bank had agreed to pay it, or at least to save Matilda M. Roberts harmless from it. To make this point clear, it is necessary to state that in 1887, which was prior to the transactions to which we have referred, Matilda M. Roberts was indebted to the bank in the sum of $35,000. In that year she borrowed $20,000 from one M. B. Erskine, and used the proceeds of the loan to reduce the amount she owed the bank. As security for this loan, she executed a mortgage upon certain real estate owned by her in the City of Fargo In all of the negotiations and matters connected with this loan, Mrs. Roberts was represented by C. A. Roberts, her husband. It also appears that George Q. Erskine represented the mortgagee's interests, and attended to the security. George Q. Erskine was also vice president of the defendant bank. The Inman judgment was a first lien upon the property which Mrs. Roberts was about to include in the mortgage for the $20,000 loan. It is at this stage of the negotiations, and under these circumstances, when the mortgage was about to be given, that it is claimed that George Q. Erskine promised C. A. Roberts that the bank would either pay this judgment, or at least hold Mrs. Roberts harmless from it. Upon this branch of the case the Court, in substance, instructed the jury that it was plaintiff's contention "that the defendant bank agreed to save the said Matilda M. Roberts harmless from anything due on said judgment," and that the allowance of the judgment as an offset depended upon the question "whether or not the bank agreed to save Mrs. Roberts from liability on account of said judgment" In granting a new trial the Court embodied in its order, as one of the reasons for granting it, the following: "The Court should not have submitted to the jury the question whether the defendant bank agrees to assume, and relieve Matilda M. Roberts from liability for; the payment of the Inman judgment, for the reason that, as matter of law, there was no consideration for such alleged promise or agreement." Counsel for the bank also urge other legal reasons in support of the decision of the trial court that it was error to submit to the jury the question as to the assumption by the bank of liability as to this judgment. It is unnecessary to set them out

here, for we are convinced that the Court's order was properly made, upon the particular ground specified, namely, that there was no consideration for the alleged promise. It is true, the bank received the $20,000 derived from the loan 'which Mrs. Roberts made from M. B. Erskine, and applied it upon her indebtedness. But in receiving it the bank obtained only what it was legally entitled to, and in paying it Mrs. Roberts only performed in part an existing legal obligation. It is a well-settled principle that the doing of an act which is required by previous agreement does not furnish a consideration for a new contract. For this reason it is held that the payment of a part of an indebtedness which is due is not consideration for a new promise. *Parmelee* v. *Thompson*, 45 N. Y. 58; *Kellogg* v. *Olmsted*, 25 N. Y. 189; *Royal* v. *Lindsay*, 15 Kan. 445; *Ayres* v. *Railroad Co.*, 52 Iowa, 478, 3 N. W. Rep. 522; Bish. Cont. § § 48-50. This is conceded by counsel for plaintiff, and no claim is therefore made that the payment of the $20,000 created a consideration to support the alleged promise. Their contention is that the consideration is to be found in the prejudice suffered by Mrs. Roberts in the giving of a mortgage to M. B. Erskine, which upon its face did not show forth the truth. Section 3871, Rev. Codes, defines "good consideration" as follows: "Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not lawfully entitled or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer as an inducement to the promisor, is a good consideration for a promise." It has already appeared that the bank received no benefit to which it was not lawfully entitled. It is clear, then, if there is a consideration in the transaction in question, it is to be found, if at all, in counsel's contention, namely, in some prejudice suffered by Mrs. Roberts, the promisee. All of the evidence in the record relating to the alleged promise of George Q. Erskine as to this judgment, which has been indiscriminately referred to as an agreement to pay, to indemnify, and to save harmless, is given by C. A. Roberts. There is nothing in the evidence to indicate that the payment of the judgment by the bank out of its own funds was contemplated even as a remote contingency by either party. The alleged promise was made at the time when the $20,000 mortgage was being executed to M. B. Erskine, and it is apparent that this Inman judgment entered into the subject of conversation between C. A. Roberts, who was acting for his wife, and George Q. Erskine, only by reason of a difference of opinion between the acting parties as to the form the mortgage should take in reference to the judgment which was a first lien upon the property about to be mortgaged. Roberts wanted it to appear upon the face of the mortgage that it was subject to the judgment. Erskine did not, but wished it to show upon its face that it was a first lien. We are not informed as to which party

prevailed, as the mortgage is not before us, but will assume that Mrs. Roberts finally consented to have the mortgage made as Erskine wanted it, and that it was so made. This transaction is explained by the witness C. A. Roberts in the following language: "I wanted to put that into the mortgage to M. B. Erskine,—this $20,000,—and I wanted to put it subject to this mortgage. That was the only lien on this land, and Mr. Erskine said he did not want that to appear there; that, while the bank was getting the money from M. B. Erskine,—this $20,000,—they expected to have to stand behind the whole deal, and it was not supposed that this land would be taken in on this mortgage. He did not want the Inman mortgage to appear in there, because he did not want M. B. Erskine to get the impression that they had taken incumbered property, or property that had an incumbrance on it. He said, in case it should ever come up, the bank would take care of it." The Inman judgment seems to have been recognized as a first lien which was both valid and collectible against Mrs. Roberts. No reason appears why at that time the bank should lose any part of its claim against her by paying or agreeing to pay this judgment against her out of its own funds. The evidence does not show that such a payment by the bank was ever referred to or talked about in any way. The nearest approach to it is contained in the last sentence of C. A. Roberts' testimony above quoted, where he testifies that "he (Erskine) said, in case it should ever come up, the bank would take care of it." It is possible to conceive of circumstances surrounding the use of the words quoted which would permit them to be interpreted as an agreement to pay or to indemnity, and as actually expressing that promise. But such conditions do not exist here. Neither is there any evidence from which an agreement to pay the judgment from its own funds can be inferred. The only discussion as to the judgment was as to whether the mortgage should or should not show upon its face this prior lien. Roberts did not wish to have his wife make written representations of title to the mortgagee which were not true. George Q. Erskine, acting for the mortgagee, desired that it should contain no reference to the prior lien, and to assure the mortgagor that in complying with his request, and executing the mortgage in the form desired, she would suffer no prejudice, made the promise that, if "it should ever come up the bank would take care of it." This promise goes solely to protecting Mrs. Roberts from prejudice which might otherwise have followed by reason of the mortgage not mentioning the Inman lien, and in our judgment, cannot be entended further. It is not shown that Mrs. Roberts suffered any prejudice, injury, or loss of any kind by reason of executing the mortgage in the form requested. On the contrary, it appears that no prejudice has resulted to her; further, that the promise by Mr. Erskine that the bank would take care of the judgment has been kept,—the bank buying it and taking an assignment,—and that Mrs. Roberts has

been caused no trouble by reason of the fact that the mortgage was not given in the form her husband desired. Under the facts as they appear in the record, we do not find that Mrs. Roberts either suffered or agreed to suffer any prejudice which would furnish a consideration for the alleged promise. Neither do we find that the promise narrated by C. A. Roberts went to the extent of being an agreement for paying the judgment, or indemnifying Mrs. Roberts against the necessity of paying it herself.

The remaining point relates to the right of the intervener to recover. This, so far as we have occasion to consider it, is dependent upon the question whether the actual transfer of the account against the bank by Matilda M. Roberts to the plaintiff occurred after or before it was garnished by the intervener. If it was assigned before the garnishment, and if the assignment is not otherwise impeached, then, of course, the intervener acquired no rights by its garnishment. Plaintiff's version is that this account against the bank, along with certain other property, was transferred to him by his mother, Matilda M. Roberts, in payment for services rendered by him after he was 14 years of age. The evidence discloses that the matter of the transfer was discussed by plaintiff and his mother about Thanksgiving time in 1895, and again at Christmas time of the same year. It is agreed that the garnishment summons was served on January 27 and 28, 1896; also, that Matilda M. Roberts executed a written assignment of this account to plaintiff on January 30, 1896, and as of that date. It will be noticed that intervener's garnishment was made prior to the written assignment, but subsequent to the oral negotiations. It is plaintiff's contention, however, that the transfer was concluded at Christmas time, and that the subsequent written assignment was merely a formal expression of a transaction which was formerly complete. If in fact it was actually assigned orally, as claimed, that would be sufficient, for it is not necessary that the assignment of a chose in action be in writing. *Howe* v. *Jones* (Iowa) 8 N. W. Rep. 451; *Moore* v. *Lowrey,* 25 Iowa, 336; *Perkins* v. *Peterson* (Colo. App.) 29 Pac. Rep. 1135. The intervener, on the contrary, interprets the conversations which occurred prior to the garnishment as altogether looking forward to the subsequent assignment which was made in writing after the garnishment; that is, it contends that the conversations amounted, at most, to no more than an agreement for a sale, and that the sale itself was not in fact made until the written assignment was executed. The question as to the actual time the account was transferred was submitted to the jury under instructions which the intervener deemed erroneous and prejudicial, and to which it excepted. These were urged as errors upon the motion for new trial. The Court so held, and, in granting the motion, inserted in its order, as a second reason therefor, the following: "That, as matter of law, the alleged assignment from Matilda M. Roberts to the plaintiff took effect from the date of the written

assignment, and was therefore subsequent to the levy and lien of the garnishment issued by the intervener." We do not agree to the reason given for sustaining the motion; for, in our judgment, the evidence upon the point now under consideration is not of that decisive character which will permit us to say, merely as matter of law, that the assignment took effect on January 30, 1896. On the contrary, we deem it entirely a question of fact for the jury to determine. As supporting January 30, 1896, as the date of the actual sale, there is the evidence furnished by the written assignment itself; also, plaintiff's original complaint herein, wherein he alleged that the account was assigned to him on that date. Further support is also found in certain portions of the evidence of the immediate parties to the transaction, from which a jury might conclude that the agreement made at Christmas time was merely an agreement to sell, and not an actual sale, or that it was merely a tentative arrangement, to be consummated at a later date by an actual assignment. Against this, however, stands the explicit statement of the plaintiff and his mother, in other parts of the record, that the settlement was entirely completed at Christmas. Just what this means is not clear, but the testimony of W. F. Ball, who was present and participated in the conversation, is explicit. Upon this point he testifies in this language: "We talked the matter over, and Mrs. Roberts said she had given her claims to Will, and Will had accepted them in full of all his claims against her that he had." It was properly a question for the jury to determine from this conflicting evidence when the actual sale was made. But the fact that the Court has given a reason for granting a new trial which is not considered sufficient is not important, for we find that it was properly granted upon other grounds which were urged in support of the motion. We refer to errors in the instructions to the jury, to which exceptions were taken by the intervener.

The following portion of the charge is urged as prejudicial: "It is admitted in this action that the written contract between the parties was dated January 30, 1896, but that the actual contract was made some time in December, 1895, or at least prior to January 26, 1896." Plaintiff's entire case hinged upon establishing an actual transfer of the account to him in December, 1895. That was the one important question of fact in issue. The statement that it was admitted "that the actual contract was made some time in December, 1895, or at least prior to January 26, 1896," coming from the Court, necessarily would have great weight with the jury. No such admission was in fact made. The statement by the Court is a mere inadvertence, but it went to the jury as an admitted fact, and a most important one. It is true that in other portions of the charge language was used which might be considered as modifying the portion of which complaint is made, but it is not sufficiently cured, in our judgment, so as to entirely remove the prejudice which must have followed it as an incorrect statement of a most material fact.

N. D. R.—31

The following portion of the Court's charge is also urged as erroneous: "It is for you to say when Matilda M. Roberts and the plaintiff reached their agreement for the sale and transfer of the causes of action to the latter. If you find from the evidence that such agreement was actually reached and made on or prior to January 26, 1896, then you must find for the plaintiff, as against the intervener, Bemis Bros. Bag Company, notwithstanding the agreement was not reduced to writing until January 30, 1896." The error specified in the use of the foregoing language is that the jury are therein required to find for plaintiff if they shall find that an agreement for the sale of the account was reached and made prior to the intervener's garnishment; the particular error consisting in the Court's failure to make plaintiff's right to recover entirely dependent upon an actual prior sale transferring title to him at the time of the transaction, and in expressly allowing the plaintiff to recover even though the prior agreement was nothing more than an agreement to sell and transfer at some future date. We think the exceptions were well founded, and the instruction erroneous. The one vital question of fact was when, if ever, was this account actually sold to plaintiff? Not when was an agreement made to sell or for a future sale? Intervener's rights under his garnishment were not cut off by a mere agreement to sell, or agreement for a sale, which had not become operative to actually transfer the title to the account. The actual sale is the decisive test of the rights of plaintiff and intervener. A mere agreement upon terms of settlement between plaintiff and his mother, by which he was to release his claim against her for services, and she was to assign the accounts at some future time, is not enough. In order that plaintiff may prevail, it must appear that at some period of time prior to the garnishment their negotiations had reached a stage where the plaintiff had released his claim for services, and Matilda M. Roberts had actually transferred to the plaintiff the title to the account in question. Whether this was done by parol or written assignment is not material. It is the fact which controls, not the form. Under the instructions complained of, the jury were permitted to find for the plaintiff even though the Christmas agreement was no more than an agreement upon the terms of a settlement and for a future sale, in accordance with which the title to the account was to pass to plaintiff at a future date. This was prejudicial error, for, if the title to the account still continued in Mrs. Roberts at the time of the garnishment, the intervener, and not plaintiff, was entitled to a verdict. The order granting a new trial is affirmed. All concur.

### ON PETITION FOR REHEARING.

Counsel for intervener in their petition for a rehearing urge that, as matter of law, the transfer of the account by Mrs. Roberts to the plaintiff must be held to have been made on January 30, 1896, which was the date of the delivery of the formal written assignment, and in this connection cite sections 3515, 3889, Rev. Codes,

which provide that grants and written contracts take effect only upon delivery. Our attention is also called to section 3888, Id., which provides that "the execution of a contract in writing, whether the law requires it to be in writing or not, supersedes all the oral negotiations and stipulations concerning its matter, which preceded or accompanied it." These sections do not militate against the view expressed in our former opinion; for we agree that if the plaintiff were relying upon the written assignment as representing the contract by which he obtained title, or if the evidence was conclusive that the sale of the account was not completed until the written assignment was executed and delivered, and that all that preceded were merely preliminary negotiations relative thereto, then the delivery of that instrument would, as matter of law, fix the date of the transfer. But such is not the case here. It has already been shown that it is a disputed question of fact whether the parties intended and understood that they had completed the transfer by the oral conversation, or whether the transfer stood open and suspended up to the time it was embodied in writing. This question is for the jury to determine, under proper instructions.

It is still further contended that, inasmuch as a formal written assignment was subsequently executed, all that preceded it was superseded by that writing, under section 3888, supra, and that the date of the delivery of the written assignment must therefore govern. It is apparent that this section is merely declaratory of the general rule that a written contract cannot be varied, contradicted, or modified by parol evidence of anything that occurred at or prior to the time when such written contract was executed. It is well settled that this rule applies only to parties and privies, and that "where the controversy is between a party to a written contract and one who is neither a party to it, nor a privy to one who is, the rule excluding parol evidence to explain, vary, modify, or contradict the writing does not apply. In such case neither the party nor the stranger to the contract is bound by the rule excluding parol evidence." See 11 Am. & Eng. Enc. L. (2d Ed.) 550, and cases cited; also, Greenl. Ev. § 279; 1 Rice, Ev. § 158. The intervener is a stranger to the written assignment, and cannot, therefore, invoke the application of the rule; and the jury must accordingly determine from the evidence when the account was in fact transferred, regardless of whether it was by parol or by written assignment. Our conclusion is supported by *Bell* v. *Offutt,* 10 Bush, 632, wherein the Court said: "If two persons enter into a verbal agreement about a matter as to which an enforceable parol contract can be made, it would be no defense, when one of them is sued for a breach of the contract, that he understood it would not be obligatory unless reduced to writing; nor does a contemporaneous agreement to reduce a contract to writing make its validity to depend upon its being actually reduced to writing and signed. The agreement to put it in writing amounts to no more than an agreement by the parties to provide a particular kind of evidence of the terms of the contract, and no

more prevented its enforcement upon other legal evidence than an agreement that they would go to a named individual, and state to him the terms of their contract, would render the testimony of any other competent witness inadmissible to prove what the contract was." Also, *Green* v. *Cole,* 103 Mo. 70, 15 S. W. Rep. 317, in which it is said that "there must be a mutual assent to all of the propositions; for, so long as any matter forming an element of the contract remains open, the contract is not complete. Though the terms of the contract may all be agreed upon, still, if the parties make it a condition to the existence of the contract that the terms agreed upon be reduced to writing and signed by them, there is no contract until this is done. On the other hand, it is well-settled law, that, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of a present contract. In other words, if the parties make an agreement which they intend shall be binding from the time it is made, effect will be given to it from that time, though they intend it shall be superseded by a more formal written instrument,"—and cases cited. See, also, *Steamship Co.* v. *Swift,* 86 Me. 248, 29 Atl. Rep. 1063; *Sanders* v. *Fruit Co.,* 144 N. Y. 209, 39 N. E. Rep. 75; *Hodges* v. *Sublett,* 91 Ala. 588, 8 So. Rep. 800; *Blaney* v. *Hoke,* 14 Ohio St. 292.

We have in the case at bar an alleged transfer of an account which can be lawfully made either by a parol or a written assignment. If it was in fact assigned by parol, and no condition remained to be performed to make it a completed transaction, then the title to the account vested in the plaintiff by virtue of such parol assignment, and such title so transferred connot be impaired by the fact that such transfer was evidenced by a written instrument executed at a later date. If, on the other hand, the transfer was not complete, and it was so understood between the parties thereto, until it should be reduced to writing, then the prior oral negotiations were merely preliminary to, and are superseded by, the written assignment, and that instrument is the contract by which the title to the account was transferred, and the date of its delivery fixes the date at which plaintiff obtained the title to the said account. There are cases which seem to announce a different rule,—among which is *Spinney* v. *Downing* (Cal.) 41 Pac. Rep. 797. But we think the prevailing and better rule is that given in *Bell* v. *Offutt,* supra. The petition for rehearing is denied.