**NORTH DAKOTA INSURANCE GUARANTY ASSOCIATION, Plaintiff and Appellee,**

v.

**AGWAY, INC., Defendant and Appellant,**

**and**

**C & J Distributing and Brock Manufacturing, Inc., Defendants.**

**Civ. No. 900127.**

Supreme Court of North Dakota.

Oct. 31, 1990.

Morley & Morley, Ltd., Grand Forks, for plaintiff and appellee; argued by Patrick R. Morley.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant; argued by LaDonne R. Vik.

MESCHKE, Justice.

Agway, Inc. ["Agway"] appealed from a judgment determining that the North Dakota Insurance Guaranty Association ["NDIGA"] had no duty to defend or provide coverage in an underlying lawsuit. We affirm.

NDIGA is a non-profit unincorporated legal entity created by NDCC 26.1–42–03. NDIGA is authorized to sue and be sued. NDCC 26.1–42–05(2)(c). NDIGA's purpose is to protect the public by providing financial resources when an insurer becomes insolvent and there is a claim for which the insolvent insurer was obligated to provide coverage. *Beyer's Cement, Inc. v. North Dakota Insurance Guaranty Association*, 417 N.W.2d 370 (N.D.1987).

NDIGA's responsibilities are limited by the statutes that created it. NDCC 26.1–42–02 says:

*Definitions.* As used in this chapter:
\* \* \* \* \* \*

3. "Covered claim" means an unpaid claim, including one for unearned premiums, within the coverage of an insurance policy to which this chapter applies issued by an insurer if the insurer becomes insolvent after July 1, 1971. The claimant or insured must be a resident of this state at the time of the insured event or the insured property must be permanently located in this state. "Covered claim" does not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

NDCC 26.1–42–12 says:

*Nonduplication of recovery.*

1. Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, is required to exhaust first the right under the policy. Any amount payable on a covered claim under this chapter must be reduced by the amount of any recovery under the insurance policy.

Thus, NDIGA does not provide coverage if there is other available insurance to cover the loss or if the claim is one for subrogation.

Agway is an incorporated farm supply and food marketing cooperative. In 1983, two separate windstorms destroyed two large grain bins at Agway's facility in Grandin, North Dakota. The bins had been manufactured by Brock Manufacturing, Inc. ["Brock"], and were constructed by C & J Distributing, Inc. ["C & J"]. For the loss of the bins, Agway recovered $12,-862.44 from Travelers Insurance Company ["Travelers"] and $173,161.89 from Agway Insurance Company ["AIC"], which is a wholly owned subsidiary of Agway.

Agway sued Brock and C & J, alleging negligence, breach of warranty, and strict liability. C & J's insurer, Iowa National Mutual Insurance Company, was later declared insolvent and C & J is also insolvent. C & J's defense was assumed by NDIGA.

NDIGA then brought this declaratory judgment action seeking a determination that Agway's claim was not a "covered claim" under NDCC 26.1–42–02 because Agway had received payment for the losses from its own insurers, Travelers and AIC. Agway conceded that it was not entitled to recover from NDIGA the $12,862.44 paid by Travelers. Agway asserted, however, that it was entitled to recover for its losses in excess of $12,862.44 because the payments from AIC were not insurance proceeds but were actually payments under a self-insurance plan funded by Agway and administered by AIC. After a trial without a jury, the trial court determined that the payments from AIC were insurance proceeds and that NDIGA had no duty to defend or provide coverage.

The pivotal issue on appeal is whether the agreement between Agway and AIC was a contract of insurance.

A sketch of Agway's insurance program will supply the setting of this dispute. Agway's primary insurer at the time of the losses was Travelers. The Travelers policy provided $732 million in coverage, with a per occurrence deductible of $100,000 and an aggregate deductible of $1,000,000.

Agway's contract with AIC was designed to cover the deductible on the Travelers policy, providing coverage of $100,000 per occurrence with a $1,000,000 limit. The written agreement between Agway and AIC appears on its face to be a contract of insurance, and Agway concedes that it is virtually identical to the Travelers insurance policy.

Although the parol evidence rule ordinarily limits admission of extrinsic evidence to vary the terms of an unambiguous written agreement, where the controversy is between a party to the written contract and a stranger to it, the rule does not apply. E.g., Zimmer v. Bellon, 153 N.W.2d 757, 762 (N.D.1967); Roberts v. First National Bank of Fargo, 8 N.D. 474, 79 N.W. 993, 997 (1899) (on Petition for Rehearing).

Agway asserts, and its witnesses testified, that the agreement between Agway and AIC was not intended to be a contract of insurance, but rather Agway intended to self-insure through a program administered by AIC. Agway contends that the "premium" it paid to AIC was actually a self-insurance fund, with an amount designated as profit to AIC for its services in administering the plan. Agway's witnesses testified that there was an oral agreement that, at the end of each policy year, AIC was to return any surplus which had not been paid out on losses to Agway. Agway asserts that it therefore bore the full risk of any losses and was not insured by AIC.

Whether a particular contract constitutes a contract of insurance is generally a question of intention of the parties. 12 Appleman, Insurance Law and Practice § 7003 (1981). Where extrinsic evidence is admitted, the intent of the parties to a written contract is a question of fact. Addy v. Addy, 456 N.W.2d 506, 509 (N.D. 1990); Ramsdell v. Ramsdell, 454 N.W.2d 522, 524 (N.D.1990). The trial court admitted extrinsic evidence of the parties' intent and found that they intended to engage in insurance:

[E]ven if the Court could find that [Agway's] original intent was to self-insure, that original intention was subsequently changed to engage in true insurance when [Agway], by its voluntary conduct and among other things, caused an insurance binder and standard insurance contract to issue and be in force and effect at the time of the loss claimed and thereafter.

Because Agway was thus insured, the trial court concluded that Agway did not have a "covered claim."

Our review of findings of fact is governed by NDRCivP 52(a). A finding of fact is clearly erroneous if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Heupel, Inc. v. Schuch,* 453 N.W.2d 776, 778 (N.D.1990). We review the evidence accordingly.

■ There is ample evidentiary support for the trial court's finding that Agway and AIC intended to enter into a contract of insurance. The conduct of the parties, both before and after occurrence of these losses, was indicative of a typical insurance transaction.

At the inception of the transaction, AIC issued a standard insurance binder, and then issued a policy which has all of the indicia of a standard insurance policy. This policy lists Agway as the "insured," specifies payment of "premiums," and provides dates of coverage, policy limits, deductibles, loss payable, coverage, and exclusions. It also includes provisions governing subrogation, notice of loss, and proof of loss. These documents support the trial court's finding that this was insurance.

The parties' conduct also was wholly consistent with an insurance contract. AIC sent Agway an invoice for "Premium" due on the policy. AIC paid premium taxes of $26,600 to the State of New York on the premiums paid by Agway. After the collapse of the grain bins, Agway submitted proofs of loss to AIC. These proofs of loss, signed by the Assistant Treasurer of Agway, state that "[a]t time of loss, by the above indicated policy of insurance you insured Agway Incorporated." Further-

more, numerous internal memos and communications specify that AIC and Agway were treating the claims against Brock and C & J as subrogation claims.

■ We conclude that the trial court's finding that Agway and AIC intended to, and did in fact, enter into a contract of insurance is not clearly erroneous. Therefore, the claim against C & J in the underlying action is a subrogation claim and is not a "covered claim" under NDCC 26.1–42–02(3). Additionally, NDCC 26.1–42–12(1) requires that any claims payable by NDIGA be first reduced by the amount available under the AIC insurance policy. Thus, the trial court did not err in concluding that NDIGA had no obligation in the underlying lawsuit to pay claims for which Agway had already received payment from AIC.

The judgment is affirmed.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.