# DORA BORDSON, Appellant, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Respondent.

### (191 N. W. 839.)

**Master and servant — rule of construction of forfeiture provisions of insurance contract applicable to workmen's compensation claims.**

1. The primary object of all insurance contracts is to afford indemnity, and forfeiture provisions will be construed, if possible, so as to avoid forfeiture and afford indemnity. This rule is applicable to obligations created by the North Dakota Workmen's Compensation Act as regards claims for injury or death.

**Master and servant — claim against workmen's compensation fund established.**

2. For reasons stated in the opinion it is *held* that the plaintiff has established a valid claim against the Workmen's Compensation Fund.

Opinion filed December 30, 1922. Rehearing denied January 26, 1923.

Workmen's Compensation Acts, C. J. § 34 p. 40 n. 95; § 114 p. 115 n. 37. Insurance, 32 C. J. § 1 p. 975 n. 6; § 259 p. 1150 n. 66, 67; § 265 p. 1155 n. 2.

From a judgment of the District Court of Ramsey County, *Buttz, J.,* plaintiff appeals.

Reversed.

*H. A. Libby,* for appellant.

*S. W. Thompson, Philip Elliott,* and *L. J. Wehe,* for respondents.

CHRISTIANSON, J. On September 9, 1920, plaintiff's husband (J. W. Bordson) was accidentally killed at Hampden, North Dakota. At the time of his death he was in the employ of the St. Anthony & Dakota Elevator Company, and he was killed while engaged in the performance of his work. The plaintiff duly presented a claim to the Workmen's Compensation Bureau. The claim was rejected on the ground that at the time the accident occurred, viz., on September 9, 1920, "the employer (the St. Anthony & Dakota Elevator Company) was not insured, the insurance having been duly canceled prior to" that date. Plaintiff thereupon appealed to the district court from the decision of the bureau. The district court rendered judgment in favor of the bureau, and plaintiff has appealed to this court.

Note.—On rule of construction of forfeiture clause of insurance contract, see 14 R. C. L. 926; 3 R. C. L. Supp. 317; 4 R. C. L. Supp. 931; 5 R. C. L. Supp. 787.

Most of the facts in the case were stipulated upon the trial. It is admitted that the deceased, at the time of his death, was engaged in an occupation covered by the provisions of the Workmen's Compensation Act. It is also admitted that the deceased was covered by insurance in the Workmen's Compensation Bureau, from July 1, 1919, up to September 4, 1920. But, it is contended by the defendant Bureau, that the insurance covering the employees of the St. Anthony & Dakota Elevator Company, was canceled on that date, and was not reinstated until September 13, 1920, and that in the period intervening these two dates, there was no insurance covering the deceased, or any of the employees of the St. Anthony & Dakota Elevator Company.

The Workmen's Compensation Act was enacted by the legislative assembly in 1919. It became operative so as to afford insurance protection July 1, 1919. The St. Anthony & Dakota Elevator Company operates a number of grain elevators in this state, wherein it employs a number of employees. Sometime prior to July 1, 1919, the elevator company duly prepared and caused to be filed with the bureau pay-roll reports; it also paid the Bureau an advance premium upon an estimated pay roll, for the yearly period commencing July 1, 1919, and ending June 30, 1920, as based upon the rates adopted and published by the bureau. The bureau adopted certain rules to become effective July 1, 1920, among which were the following:

"Remittance of the premium of each and every employer should be in the hands of the bureau not later than ten days after the date which appears on the settlement sheet statement."

"Failure of any employer to have his premium payment in the hands of the bureau within sixty days after expiration date, shall automatically cancel his insurance, whereupon such employer be declared in default."

On or about June 18, 1920, the bureau sent the elevator company a blank pay-roll report with directions to fill them out and return them to the bureau. The purpose of these reports is to enable the bureau to estimate the premium for the next year, and, also, to compute the additional premium, if any, due for the past year. The elevator company caused the report to be prepared and returned to the bureau. The bureau returned it with request that the corporate seal be attached. The corrected report reached the bureau on or about August 16, 1920.

On August 24, 1920, the Bureau prepared and sent a settlement sheet to the elevator company. According to such settlement sheet there was a balance of $1,896.58 coming to the Bureau on premium for the insurance carried from July 1st, 1919, to June 30, 1920, inclusive; and the estimated premium for the year July 1, 1920 to June 30, 1921, was $4,112.50, making a total of $6,009.08.

The settlement sheet statement was divided into two parts. The first part dealt with the period beginning July 1, 1919, and ending June 30, 1920. The second part dealt with the period following, and reads as follows:

"For period beginning July 1, 1920, ending June 30, 1921.

| Manual. | Advance Estimate Pay Roll. | Rate. | Advance Estimate Premium. |
|---|---|---|---|
| 8304 | $125,000.00 | 2.75 | $3,437.50 |
| 8207 | 20,000.00 | 2.25 | 675.00 |
| | | | $4,112.50 |

Amt. of Prem. due the State Ins. Fund, $6,009.08."

We do not have before us the original exhibits, but it appears that there appeared on the back of such settlement sheet certain "instructions," among which were, that the premium payment must reach the Bureau not later than ten days after the date appearing on the settlement sheet, and that failure to do so would cancel the insurance protection. It is the custom of the elevator company to pay its current bills about the 10th of each month, and on receipt of the settlement sheet it was placed with current bills, to be paid at the usual time according to its custom, which would be about September 10th. No employee of the company had any actual knowledge of the "instructions" purported to be given on the back of the settlement sheet, or of the rules which we have quoted above. The evidence further shows that on September 7, 1920, the Workmen's Compensation Bureau wrote a letter to the elevator company, stating that the protection afforded by the fund was canceled, also, that questions of rates or classifications did not permit delay in payment of renewal premium, and, further, that if the amount due was not paid immediately, the name and amount due would be certified to the office of the attorney general for collection as

provided in the regulations of the Bureau. It appears that this letter was received by the defendant on September 8th or 9th, and that the defendant at once prepared a check, or voucher, in payment of the premium, in accordance with the settlement sheet, which check was in the amount of $6,009.08, that is, it included the total amount of the additional premium from July 1, 1919 to June 30, 1920, inclusive; and the estimated premium from July 1, 1920 to June 30, 1921, inclusive, as per the settlement sheet. The voucher issued by the elevator company, on its face, specifically stated that it was payment, as per such statement. The check or voucher did not reach the Bureau until after the accident in controversy here. The check was cashed by the Bureau in due course. The employees of the Bureau, however, testify that the check was not received in payment of premium for the period intervening July 1, 1920, and September 13, 1920. They say that the insurance was reinstated or put in force as of, and to begin on, September 13, 1920, and to continue for a period of one year from that date. And it is said that this is the practice of the Bureau in dealing with cases where insurance is cancelled for failure on the part of the employer to pay premium.

After the accident had been reported, the Bureau, in a letter written by its director of claims, dated September 17th, 1920, forwarded claim forms to the superintendent of the elevator company. Special attention was called to the fact that "there must be information as to the day, month, and year, on which the dependents were born." On September 29th, the director of claims wrote the superintendent of the elevator company, as follows:

"We acknowledge receipt of certain reports in connection with the death of J. W. Bordson while in your employ at Hampden, North Dakota.

"We return herewith claim form 10, physician's certificate in proof of death, for the reason the affidavit of physicians at the bottom of the page has not been executed. Kindly give this matter your prompt attention and forward to us by return mail."

Plaintiff contends that under the facts established, she is entitled to recover, and in our opinion that contention must be sustained. While the provisions of the Workmen's Compensation Act are in many instances ambiguous and uncertain, one thing is certain,—the law-makers

intended the act to be compulsory. That is, the act makes it compulsory for all employers to come in under it, and to pay the required premium. It does not give an employer any option in the matter at all. He cannot choose whether he will pay the premium and get the benefit of the indemnity afforded by the compensation fund, or obtain the insurance protection elsewhere, or carry the risk himself. The act requires every employer to furnish the Bureau, upon request, the information required by it to carry out the purposes of the act (§ 5). It requires the Bureau to furnish to the employers, blanks upon which to furnish information relating to the estimated pay roll for twelve months next succeeding the date on which such employer is or becomes an employer within the meaning of the act. This information is for the purpose of enabling the Bureau to fix the premium. The statute says:

"Any employer who wilfully misrepresents to the Bureau the amount of pay roll upon which the premium under this act is based shall be liable to the state in ten times the amount of the difference between the premium paid and the amount the employer should have paid. The liability to the state under this section shall be enforced in a civil action in the name of the state, and all sums collected under this section shall be paid into the Workmen's Compensation Fund." (Sec. 5).

*"Every employer* subject to this act shall contribute to the North Dakota Workmen's Compensation Fund in proportion to the annual expenditure of money by such employer for the service of persons subject to the act, the amount of such payments and the method of making the same to be determined as hereinafter provided." (Sec. 6).

*"Every ·employer* subject to this act, *shall pay annually* into the Workmen's Compensation Fund the amount of premium determined and fixed by the Workmen's Compensation Bureau for the employment or occupation of such employer, the amount of which premium to be paid by such employer to be determined by the classification, rules and rates made and published by the Bureau." etc. (Sec. 7).

"If an employer shall default in any payment required to be made by him to the Workmen's Compensation Fund, the amount so due shall be collected by civil action in the name of the people of the State as plaintiff, and it shall be the duty of the Workmen's Compensation Bureau to certify to the attorney general of the state from time to time the names and places of business of all employers known to the Bureau to

be in default for such payments for a longer period than two weeks, and the amount due from each such employer, and it shall then be the duty of the attorney general forthwith to bring, or cause to be brought against each such employer a civil action in the proper court for the collection of such amount so due, and the same when collected, shall be paid into the Workmen's Compensation Fund, and such employer's compliance with the provisions of this act requiring payments to be made to the Workmen's Compensation Fund shall date from the time of the payment of said money so collected as aforesaid to the state treasurer for credit to the Workmen's Compensation Fund." (Sec. 8).

"No agreement by an employee to waive his rights to compensation under this act shall be valid." (Sec. 21).

It is clear that the legislature intended to compel every employer falling within the provisions of the act to come in under it and make the payments therein provided for. It is true the act provides that employers, who are subject to its provisions and fail to comply with §§ 6 and 7 thereof, shall not be entitled to its benefits during the period of such noncompliance, but shall be liable to their employees for damages suffered by reason of injuries sustained in the course of employment, and also to the personal representatives of such employees where death results from such injury; and that in such action the employer shall not be permitted to invoke the fellow-servant rule, assumption of risk, or contributory negligence as a defense.

In construing the various sections of the Compensation Act, it is well to remember that this piece of legislation was intended to bring into being a new system. The legislature realized that in the first instance it would be necessary to bring the employers in, that is, make them as it were, members of the fund and compel them to furnish the Bureau with the necessary information to the end that the amount of premium required might be computed. The language utilized indicates that this matter,—that of putting the act into effect, and compelling, if necessary, by action all employers to come in and become contributors to the compensation fund,—was one of the things which the legislature deemed of great importance. The act by its terms indicates that it is not intended to afford automatic protection so far as employers are concerned. In order to be protected it is essential that an employer come in under the act and, as it were, become a member of the compensation

fund. Whether the act does or does not afford such protection as far as employees are concerned may be another question, which, however, needs no consideration here.

In this case we are not dealing with the situation where an employer had refused or failed to come in under the act. The employer had come in when the act became operative; had furnished the required information and made payment of the estimated premium, and as a result a contract had been created by operation of law between the employer and the Bureau precisely of the same nature that would have been created if the employer, in the absence of the statute, had entered into a contract with an insurance company under the same terms and provisions as embodied under the statute in consideration here. The beneficiary of such contract is in the first instance the employee rather than the employer. The relations created here, however, are at least as strong as those which would have existed in the case supposed. In the supposed case the contract could be terminated by the action of the parties; but here, by virtue of the statute, the relation between the insured, insurer and beneficiary is supposed to be continuous, and the employer cannot, whatever his desire may be, avoid liability for premiums. In this case, however, there is nothing to indicate that the employer had any intention to avoid the payment of premium. On the contrary, we believe that the only conclusion reasonably to be drawn from the facts and circumstances here is that the elevator company intended to continue to pay premiums to the compensation fund; and that the payment made by the check drawn September 9, 1919, would have been made at or about that time, without regard to whether the accident involved here had or had not occurred. It is true, as has been indicated, the statute imposes upon the employer as a penalty for violating the terms of the contract, a denial of the protection afforded, but it nowhere exempts him from obligation to pay the premiums. On the contrary it expressly recognizes that such obligation continues until discharged by payment. The purpose of all insurance is to afford indemnity, and all forfeiture provisions in insurance contracts will be construed, if possible, so as to avoid forfeiture and afford indemnity. Beauchamp v. Retail Merchants Asso. 38 N. D. 483, 165 N. W. 545. In our opinion, the Workmen's Compensation Act should be so construed. The very purpose of the act, according to the recital in § 1

thereof, is to afford "workmen injured in hazardous employments, and their families and dependents sure and certain relief . . . regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation."

If the case before us involved a policy issued by an insurance company,—a policy containing the same provisions which the Workmen's Compensation Act contains as regards the respective rights and obligations of the insurer, insured and beneficiary,—we are entirely satisfied that, under the facts here, the alleged noncompliance on the part of the insured would be deemed waived by the insurer, and the policy held effective. The suggestion that a different rule should be applied in this case, because the defendant is what is denominated a state fund, does not meet with our approval. The primary object of a Workmen's Compensation Act, remains the same, whether the indemnity is afforded by a fund operated under the direction of the state, or by a stock or mutual insurance company. The Workmen's Compensation Fund is not synonymous with the state of North Dakota. It is, it is true, an agency or fund organized in accordance with the directions at law, and supervised and administered by certain officers provided by law. But the claims against the Workmen's Compensation Fund, however, are not claims against the state, and the moneys in the fund are not state funds. State ex rel. Stearns v. Olson, 43 N. D. 619, 175 N. W. 714.

It follows from what has been said that the plaintiff is entitled to recover. The judgment appealed from is, therefore, reversed, and the cause remanded for further proceedings in conformity with this opinion.

BIRDZELL, Ch. J., and BRONSON and ROBINSON, JJ., concur.

GRACE, J. (specially concurring). It is clear to my mind that the result arrived at in the principal opinion is correct.

That the plaintiff is entitled to participate in the Workmen's Compensation Fund in view of the facts established by the record, seems to me not to admit of controversy. The premium of $6,009.08, remitted by the St. Anthony & Dakota Elevator Company, which was received by the Bureau was payment of the additional premium from July 1st, 1919, to June 30th, 1920, inclusive, and the estimated premium from July 1st, 1920, to June 30th, 1921, as per the settlement sheet.

The principal opinion discusses these and other points necessary to a decision of this case quite fully, and hence, it is needless for further discussion here.