THE AMERICAN RAILROAD CO. OF PORTO RICO, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; SIMÓN ANGUEIRA, Deceased Workman.

No. 250. Argued December 7, 1942.—Decided January 27, 1943.

Rehearing Denied March 10, 1943.

304

*Mariano Acosta Velarde,. Federico Acosta Velarde,* and *Donald K. Dexter* for petitioner. *G. Atiles Moréu, A. de Jesús Matos,* and *J. Correa Suárez* for State Insurance Fund.

Mr. Justice De Jesús delivered the opinion of the court.

On July 9, 1941, the petitioner employer filed his report of wages corresponding to the fiscal year 1940–41, and on November 26, 1941, the Manager of the State Insurance Fund informed him that the amount he was required to pay for the first semester of the year 1941–42 was $14,079.26, and granted him until the following December 20 to pay the said amount. The employer did not pay for the first semester until January 20, 1942. On March 9 he paid $8,499.07 for the second semester.

On May 6, 1942, the Assistant Manager of the State Insurance Fund notified the petitioner employer that all the accidents reported by him as having taken place from July 1, 1941, until March 8, 1942, had been declared uninsured, on the ground that the State Insurance Fund did not consider the petitioner as an insured employer during the above-mentioned period. The employer appealed to the Industrial Commission, and after the case of the deceased workman, Simón Angueira, No. C.I. 15;861 (M), who had died on February 11 of the preceding year was set for hearing on June 1, 1942, the employer was notified that at said hearing the

appeal taken by him against the decision of the State Insurance Fund declaring him an uninsured employer during said period would be discussed. After the hearing was had and the parties had been heard, the Commission, on July 1, 1942, rendered a decision whereby it was held that the employer had not been insured from July 1, 1941, until March 8, 1942, and that he was liable for all the accidents which had occurred in his business during said period.

On July 28, 1942, the employer moved for reconsideration of the decision of July 1, and gave as a reason for his delay in filing said motion that he had not been aware that said decision had been rendered until the 21st of said month, when one of the employer's attorneys, Donald H. Dexter, came to the office of the Commission and asked if said case had been decided, whereupon a copy of the decision rendered on July 1, 1942, was delivered to him. On July 29 the Commision overruled the motion for reconsideration, and in relation to the defect in the service of notice alleged by the employer, it stated that, from the records it appeared that on July 1, 1942, a copy of said decision had been sent by mail and addressed in the following manner: "Attorney Mariano Acosta Velarde, American Railroad Co. of Porto Rico, P. O. Box 2552, San Juan, P. R."

About six days after reconsideration had been denied— on August 4, 1942—the petitioner filed a petition for review in this court.

Inasmuch as §10 of the Workmen's Compensation Act (Laws of 1935, p. 250) provides that reconsideration shall be sought within ten days after the date "on which the interested person is notified of the decision of the Commission," and it being further provided by §11 of the same act, as amended by Act No. 121, approved May 2, 1940 (Laws of 1940, p. 728), that review by the Supreme Court may be requested within fifteen days after notification of the denial of reconsideration, the State Insurance Fund has prayed for

dismissal of this petition for review on the ground that it was taken after the expiration of said period and, besides, on the ground that it is frivolous.

██ In passing upon the motion for dismissal, we shall first say that the rule established in *Santana* v. *Salinas,* 54 P.R.R. 109, and *Asencio* v. *Heirs of Rodríguez,* 49 P.R.R. 8, to the effect that when the party who notifies and the party on whom notice is to be served resides within the same municipal district, service by mail is void, is not applicable to cases like the present. In the instant case it is not a matter of notification between parties, but of a notice of a judgment or a decision by a quasi-judicial administrative agency. The applicable doctrine is the same as when a notice of judgment is served by a court. But as a matter of fact the notice was not effective until July 21, 1942, it appearing from the record herein, from an affidavit by Attorney M. Acosta Velarde, that his post-office box has always been No. 326 and not No. 2552, where the copy of the decision was sent, according to the Commission's own statement, it being further stated by Attorney Acosta Velarde, as well as by the other two attorneys for the petitioner in their affidavit filed herein, that no notice whatsoever was served upon them at any time except the one served personally on Attorney Dexter on July 21, 1942.

██ Since the notice of the decision of July 1st was received on the 21st of said month, and since reconsideration was sought seven days thereafter and the petition for review in this court was filed on August 4, that is, six days after notice of the denial of the reconsideration had been served, it is obvious that the motion for reconsideration before the Industrial Commission, as well as the petition for review in this court, were filed within the periods of ten and fifteen days, respectively, fixed by law; and since the appeal is not frivolous, as we intend to show in the course of this

opinion, the motion of the State Insurance Fund should be dismissed and the appeal should be considered on its merits.

The first question which we shall consider is whether or not the employer in this case was uninsured during the first semester of the year 1941–42. The Workmen's Compensation Act provides that the insurance premium to be paid by each employer who has been insured during the preceding year shall be computed on the total number of workmen employed by said employer, the kind of occupation or industry of said workmen, and the total amount of wages paid to said workmen or industry during the preceding fiscal year, all this appearing from a duplicate statement under oath which shall be filed by the employer with the Manager not later than July 15 of each year. In view of the fact that the year begins on July 1st of each year and that therefrom the insurance would be outstanding not only during the first fifteen days of July but also during those days which the Manager would need to study and levy the premium based on said duplicate statements, the Act provided that any employer who has been covered by the State Fund up to the end of the preceding fiscal year and is covered from July 1 of the current year, shall also be covered during the period from July 1st to July 15 granted by this Act to file the pay roll, provided that every employer should file it within the said term of fifteen days, and it further provided that the payment of the premium within the term granted by the Manager gives the policy a retroactive effect to the date on which the pay roll or duplicate statement was filed; it also provided that an accident which occurs after July 15 shall be considered as a case of an uninsured employer unless the employer pays within the term fixed by the Manager.

In the case at bar the employer filed his pay roll of the preceding year on July 9, 1941, and the Manager levied the premium and granted it until December 20, 1941, to pay for the first semester. The employer did not pay during the

first semester but paid on the following January 20, when the second semester had already begun. This being so, we feel bound to conclude that the petitioner was an uninsured employer during the first semester, as alleged by the Manager. But the Manager believes that he is entitled to retain the premium paid and at the same time compel the employer to pay the compensation for all the accidents which occurred in his business during the semester in question. It is evident that the Manager is not attempting to collect an obligation for services rendered, for, as he himself alleges, the employer in this case is an uninsured employer. Therefore, there is no doubt that the payment of the so called "quota" or "premium" would in effect be a penalty imposed on the employer, and it is a well-known fact that penalties are never presumed. Until the Legislature expressly levies a penalty to the effect that an employer, even though an uninsured one, shall pay the premiums just as if he were insured, will we be in a position to pass upon the validity of such a penalty.

Having decided this first question, we shall now pass upon the second one: Should the petitioner be considered as an uninsured employer in connection with an accident which, as happened in this case, occurred on February 11, 1942, that is, after payment of the premium for the first semester had been made and the same was in the hands of the Manager on January 20, 1942, it being much greater than the one for the second semester, and as we have seen, not applicable to said first semester because it had been paid after the payment had become due and the period had expired? There is no merit to the Manager's second contention. The premium for the second semester should have been paid on January 10, 1942, and since payment was not made until the 20th of the same month, it is evident and admitted by the petitioner that he should have been considered as an uninsured employer during those days of January dur-

ing which payment was due; but thereafter, since the employer has funds in the hands of the Manager precisely to cover his insurance, said funds should be applied, so far as necessary, to the payments due for the second semester and he should be considered as an insured employer, thus following the underlying principle of justice stated in the maxim of equity which says that equity regards as done that which ought to be done.

The doctrine laid down in *Montaner, Mgr.* v. *Industrial Commission,* 59 P.R.R. 398, is in perfect harmony with the conclusion which we have just reached. In that case the employer paid during the first semester, but he did so after the expiration of the term granted by the Manager, and we held that from the date of payment and thereafter he had the status of an insured employer during said semester, but that said payment did not have retroactive effect because it had been paid after the expiration of the period granted by the Manager, and therefore, for the purposes of the accident involved therein, which occurred before the payment, the employer must be considered as an uninsured employer.

In the instant case the Commission held that the employer had the status of an insured employer from March 8, 1942, when he paid the premium levied for the second semester and he invoked the case above cited; but the Commission did not take into account the fact that from January 20, 1942, the Manager had in his hands the amount paid without basis therefor for the first semester, which should have been applied to the second, and which more than covered the premium for the second semester.

For the reasons stated, the decisions appealed from should be modified so as to hold the petitioner an uninsured employer during the first semester of the year 1941–42 and the first nineteen days of the second semester of the same year, and an insured employer from January 20, 1942, and thereafter.

310

February 3, 1943.

In my opinion the decision of the Industrial Commission conforms to the applicable law as the same was construed by this court in *Montaner, Mgr.* v. *Industrial Commission,* 59 P.R.R. 398 and it should therefore be affirmed.

The facts are clearly and definitely set forth in the first paragraph of the majority opinion, as follows:

"On July 9, 1941, the petitioner employer filed his report of wages corresponding to the fiscal year 1940–41 and on November 26, 1941 the Manager of the State Insurance Fund informed him that the amount he was required to pay for the first semester of the year 1941–42 was $14,079.26, and granted him until the following December 20 to pay the said amount. The employer did not pay for the first semester until January 20, 1942. On March 9 he paid $8,499.07 for the second semester."

And applying the statute to those facts I find it an inescapable conclusion that the employer through his own fault upon paying the first semester of his policy, fulfilled its obligation so late that the insurance was not effective during that period and upon paying the second semester, likewise outside the statutory term, but within the semester, rendered the same effective only after making payment.

In said case of *Montaner, Mgr.* v. *Industrial Commission,* we held that:

"The Workmen's Accident Compensation Act, approved April 18, 1935 (Session Laws, p. 250), established in Puerto Rico a compulsory and exclusive insurance system for compensating workmen and employees who may be injured, become disabled, or die as the result of industrial accidents. Under section 18 thereof, every employer who employs more than four workmen 'shall be obliged to insure said workmen or employees in the State Insurance Fund, the compensation that they should receive for injury, etc.' Failure to comply with the above obligation will render him liable for misdemeanor (section 17).

"Section 25 directs the Manager of the State Fund to assess and levy on every employer covered by the act *annual premiums* on the total amount of wages paid by said employer to his workmen during the year prior to the levying of the premiums. The same section provides that the premiums shall be collected *semi-annually in advance,* and provides further:

" ' . . . Should an employer fail to pay the total amount of the premiums legally levied on him *within the time fixed by the Manager,* the latter may grant an extension of thirty (30) days so that the employer may make the payment, *which* payment shall be an indispensable requirement so that the Manager may make any insurance policy effective.

" ' * * * * * * *

" ' *Any employer subject to the provisions of this Act during any part of a semester shall pay the premium for the whole of said semester,* but he shall be entitled to such reimbursement, if any, as provided in the following section: . . . . . ' (Italics ours.)

"Section 26 prescribes the procedure to be followed by the manager at the end of each fiscal year for the liquidation of the policies and readjustment of the premiums. If the payroll for the last year is less than that of the preceding year, which served as a basis for assessing and collecting the premiums, the manager shall refund the difference to the employer; otherwise he shall collect any additional necessary premiums.

"Section 27 provides, among other things, that the insurance of each employer shall become effective immediately after the filing of the payroll or duplicate statement, 'together with the amount of the premiums corresponding to the percentage of the wages declared in said statement, in accordance with the rates fixed by the manager';

" ' . . . *Provided,* That any accident that occurs before payment of said premiums is made shall be considered *as a case of uninsured employer unless the employer pays within the term fixed by the Manager* of the State Fund, in which case, the insurance shall begin to run from the date on which the employer filed the payroll or statement in the office of the Manager.' (Italics ours.)

"The foregoing statutory provisions are so clear that their application to the facts of the instant case offers no difficulty. The employer duly filed, on July 15, 1939, the statement of wages and salaries paid during the previous fiscal year, 1938–39. In compliance with his duty, the manager assessed the premiums for the year 1939–40, and granted the employer until September 10, 1939, to make the first

half-yearly payment. The insured failed to apply for an extension of the term fixed by the manager, allowed the said term to expire, and finally paid the amount of the first half-yearly premium 45 days after the expiration of such term, that is, on October 24, 1939.

"From a consideration of the facts and circumstances above set forth and of the statutory provisions applicable to the same, we must hold: That as the payment of the premiums within the term fixed by the manager is an indispensable requisite to enable the manager to make effective any insurance policy, the policy in the case at bar became effective on October 24, 1939, when the first half-yearly payment was made; that as the accident occurred on August 23, 1939, before the first half-yearly payment for 1939–40 was made, and as such payment was not effected within the term fixed by the manager, which expired on September 10, 1939, said accident is and must be considered as one pertaining to an uninsured employer; and, finally, that the employer is not entitled to the refund sought by him, first, because under section 25, supra, the payment of premiums must be made for full semesters, and, second, because the only refund that the manager is empowered to make is the one that, according to section 26, supra, must be made at the end of each year for the liquidation of policies and readjustment of premium rates.

"The employer in the instant case could have rendered his policy effective from the filing of the payroll by paying the premiums within the term fixed by the manager or within any extension thereof that the latter might have granted. He failed to do so and must, therefore, suffer the consequences of his delay in making such payment." Montaner v. Industrial Commission, 59 P.R.R. 398, 400–403.

All the foregoing should in my opinion be upheld because it is the strict construction of the law. And once this is upheld, the case can not be decided in the way the majority of the judges of the court have decided it.

It deals with an obligatory annual insurance, the premium of which must be paid in advance semester payments. The payment of the premiums and the penalties fixed by law itself are two independent and distinct things. Payment must always be made. The employer itself admitted this. When, on January 20, 1942, after having been granted an extension until December 20, 1941, it made its first payment, it earmarked it, as it was bound to do, for the first semester,

and it was to that first semester that the State Insurance Fund applied it. And when on March 9, 1942, also untimely, it made payment for the second semester the same was applied to the second semester.

That the payment thus made only operated to revive its policy from March 9, 1942, is a fact of which it had to be aware in view of the language used in the statute.

The question involved herein is not of an insurance on a new busines begun in the second semester of a fiscal year, but of an employer which had been insured for previous years which filed its pay roll on July 9, 1941, that is, at the beginning of the fiscal year as provided by law, and based on this report the computation of the insurance premium which it was bound to pay was made, which premium it paid after the expiration of the statutory period and therefore it only operated as compliance with the obligation of payment but not as rendering the policy effective for the period during which payment had not been made, which is one of the penalties imposed by law.

ON MOTION FOR REHEARING

March 10, 1943

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The Manager now seeks the reconsideration of the judgment rendered in this case and in support thereof he alleges that we erred in deciding:

1. That the collection of the premium from an employer for the period during which it was declared uninsured constitutes a penalty.

2. That a regular employer, as provided by law, may have, pursuant to §§18, 25, 26, and 27 of the Workmen's Compensation Act now in force, a policy for only one semester, even though it transacted business during the whole year.

We find it unnecessary to repeat the facts of the case. It is enough to refer to the opinion on which the judgment was based. However, for a better understanding of the questions involved, it seems advisable to make a brief analysis of the questions really decided, to wit:

(a) That when an employer subject to the provisions of the Workmen's Compensation Act fails to pay within a semester the premium corresponding thereto, said employer is an uninsured employer during said semester, and the Manager follows the law in so declaring him.

(b) That the authority of the Manager recognized in the foregoing paragraph (a) does not extend to the point where he may require the uninsured employer to assume all the responsibilities that the law imposes on him as such and at the same time require him to pay the premium as if he had been insured and had received the benefits thereof.

(c) That the premium imposed by law is the price which every employer pays in exchange for the insurance he receives, and since he does not receive the benefit of the insurance, the demand for payment under such conditions would be tantamount to adding to the law a penalty which the lawmaker did not intend to impose, and which penalty may not be inferred from the language of the act because penalties are never presumed.

(d) That since the employer on January 20 paid the premium corresponding to the first semester, which was due on December 31 and since said payment could not be applied to the first semester because the employer did not receive any benefit during said period and inasmuch as the payment exceeded the amount corresponding to the premium of the second semester, in equity said amount should be applied to the payment of the second semester, and therefore the employer should be considered as insured from January 20 until June 30; and

(c) Since the accident occurred on February 11 and payment was made on January 20, the accident was covered by the State Fund insurance.

 In challenging the conclusions of law which we have just set forth, counsel for the Manager states that the question raised by the petitioner was not novel nor was it, in his opinion, open for discussion in this jurisdiction, because this court in *Rodríguez* v. *Industrial Commission,* 54 P.R.R. 274, decided the opposite of our decision herein, with facts substantially similar to those in the instant case.

To this we must answer that although *stare decisis* compels a court to follow its decisions in subsequent cases, in order to establish the stability and certainty that should exist in the law, nevertheless, this doctrine does not go so far as to provide that the opinion of the court should have the scope of a dogma which must be followed blindly, even though the court realizes later that its previous decision was erroneous. As we have previously suggested, the purpose which inspired the doctrine of *stare decisis* is to preserve stability and certainty in the law, and never to perpetuate errors.

 We concede that the doctrine of the present case is in open conflict with that in *Rodríguez* v. *Industrial Commission, supra.* Therefore, the question to be decided is, which of the two decisions is correct.

The reasoning in the case of *Rodríguez* is predicated upon a syllogism, the major premise of which is false and therefore the conclusion must necessarily be false. In said case one starts from the premise that the insurance is annual, even though payment is paid in advance by semesters; and if the policy is annual, it is evident that whoever wishes to derive the benefits must pay the annual premium *in toto* and may not divide the insurance by paying the premium for the second semester without also paying the premium for the first. It is true that §25 of the Act refers to annual payments, but in law the characteristics of a thing, and not its

label, determine its real nature. And from the language of the law itself it clearly appears that, for all practical purposes, the policy, though spoken of as annual, as was held in the case of the *Heirs of Rodríguez*, is in reality semiannual. Therefore an employer who pays on time his first semester premium, but sells or liquidates his business before the first of January of any year is exempt from payment of the premium for the second semester from January to June by giving such notice and proof as required by the Manager that he will not be subject to the provisions of the Act during the second semester. Section 25. It further provides that any employer subject to the provisions of this Act during any part of a semester shall pay the premiums for the whole of said semester, but he shall be entitled to such reimbursement, if any, as provided in §26, "provided that in such cases reimbursements may be made *at the expiration of the semester* for which said premium were paid."

If payments were really made annually, the insured would not be entitled to reimbursement of any part of the annual premium under any circumstances and he could not pay the first semester and then be excused from payment of the second nor could he pay for only part of a semester. The doctrine in the case of *Heirs of Rodríguez, supra,* leads to the absurdity that a person who is an employer from January 1st and thereafter may not obtain insurance by paying for only the semester from January to June, and that he would have to pay for the whole year, if the policy were annual, and therefore he would have to pay the premium for the whole year, even though he had not been insured during the first semester. However, as we have already seen, the Act itself permits the employer who has been such during the first semester to be excused from payment of the premium for the second semester, provided he serves notice prior to January 1st that he will not be an employer during said semester. In that case, for all legal purposes, the insurance

is semiannual, since it does not require the payment of the entire annual premium. If the insurance were in fact annual, the employer could not obtain, at any time, insurance by paying the premium for one semester or part of one semester only, just as a taxpayer can not be excused from the payment of taxes for the second semester or ask to be reimbursed for part of the payment of one semester because he ceased being owner of a property or because it was destroyed, or because some change occurs during the tax year which might thereafter excuse him from the tax payment. And this is so, because the tax, even though it is paid by advance semesters, is in fact annual and not semiannual. *Teachers Ass.* v. *Treasurer of P. R.,* 54 P.R.R. 511; *Roig* v. *Treasurer,* 54 P.R.R. 617.

The case of *Bordson* v. *North Dakota Workmen's Compensation Bureau,* 191 N. W. 839, invoked by the Manager, does not support his contention. The North Dakota Law, although it establishes a State Fund, is substantially different from ours. Said law provides that the employer *shall make one payment only for the whole year.* If the total amount of premium amounts to more than $100, the employer has the option of paying the same in two or four installments, at his convenience; but interest shall be added to all deferred payments at the rate of 5 per cent per annum and the employer shall file a satisfactory bond guaranteeing the payment of said installments as well as the penalties and court costs in the event such installments are not paid prior to date of default. Said act further provides that in the event the employer defaults in the annual payment at the time fixed therefor, he shall be declared an uninsured employer during the period prior to the payment; but from the date of such payment, whether the payment is made voluntarily or in payment of any judgment rendered in an action brought against him by the Attorney General to collect the premium, *from the date of such payment, we repeat, and for one year thereafter, the employer is entitled to*

*insurance protection, so that at no time under said statute, does the State Fund collect a premium without giving insurance,* as would happen in Puerto Rico if we accepted the construction of *Heirs of Rodríguez, supra.* In the *Bordson* case, the employer paid the total amount of his annual premium two or three days after it had become due, under circumstances which were something like a waiver on the part of the Bureau of its right to demand payment on the date fixed, and in the action brought by the beneficiaries of the workman against the Fund for an award of compensation, the judgment of the lower court which exonerated the Bureau was reversed, the latter was made responsible for the compensation, and the case was remanded for further proceedings not inconsistent with the findings set forth in the opinion.

The fact that the premiums or rates are levied for each classification according to the risks of the classification to which the employer belongs rather than according to the individual experience of the employer, which argument the Manager makes in contending that the policy is annual and not semiannual, does not resist the slightest analysis in the light of the provisions of the Act itself. Have not we seen that an employer, who has paid his premium for the first semester, may be excused from paying that of the second semester, provided he gives notice to the Manager before January 1 when he has ceased to be an employer subject to the law? Does it not go even further, when it provides that, although the employer is subject to the provision only during a part of the semester, he is still bound to pay the total amount of the premium, without prejudice after the expiration of the semester to a right of reimbursement of part of the premium corresponding to the period during which he was not subject to the Act? The mode of fixing the rate or premium does not change the nature of the payment, which continues to be for services rendered. This mode of deter-

mination is used by all solvent enterprises—public as well as private—in all kinds of insurance and it does not affect the nature of the policy.

The cases of *Montaner, Mgr.* v. *Industrial Commission,* 59 P.R.R. 398, and *Sucrs. de J. González & Cía.* v. *Industrial Commission,* decided two days before the instant case (*ante,* p. 295) are not in conflict with the present one. The case of *Angel Suárez, supra,* is distinguished from the opinion in the case at bar, and what is said there is entirely compatible with the conclusion which we reach in the instant case, because in that case the employer paid within the first semester but after the expiration of the period fixed by the Manager, and we held that the payment of the premium, under such conditions had a prospective effect, that is, that the insurance becomes effective from the date of payment and therefore, an accident which occurs prior to said date is not protected by insurance. There is no conflict between this case and that of *Sucrs. de José González & Co.* It is true that it was the Manager who maintained in said case that although the Act prescribed a policy for one year, the same would be "suspended"—which is practically the same as saying that it is nonexistent—for one semester in said year, under certain conditions, one of which was the failure to pay timely the premium for the second semester. Apparently, the Manager wishes us to consider the policy as semiannual only when it is for the benefit of the Fund, and otherwise that we should consider it as annual in name as well as in legal effect. But as enacted—unfortunately perhaps—the statute is a two-edged sword and sometimes the policy is semiannual in legal effect, to the prejudice of the Fund. As we have already said, the Workmen's Compensation Act provides penalties for failure to insure. Section 17 thereof provides under the title "Penal Sanction for Failure to Insure," that such failure constitutes a misdemeanor, punishable by a fine of not less than twenty-five (25) dollars or

more than five hundred (500) dollars, or by imprisonment for not less than fifteen (15) days or more than six (6) months, or by both penalties, and §15 establishes a sort of civil sanction by authorizing the workman to sue the uninsured employer for compensation for damages, precluding the employer from pleading contributory negligence, risks assumed, etc. as a defense, which could be raised in an ordinary action, and at the same time allowing the workman to attach, without furnishing bond, the property of the employer, including in said attachments a reasonable amount for attorney's fees to be fixed by the court in the event the complaint is sustained.

But nowhere in the Act is a penalty imposed on the employer to compel him to pay the premium for a semester during which he has not been insured and at the same time that he should pay for all the accidents which occurred during said semester, notwithstanding the payment of the premium. When the lawmaker deems it convenient to impose such a penalty, we shall be ready to apply the doctrine established in the case of *Heirs of Rodríguez,* but so long as said penalty is not imposed, in our opinion, the doctrine of the instant case should prevail, imposing on the employer the penalties expressly provided by the Act, that is, to declare him during said semester an uninsured employer, with all its legal consequences, and to prosecute him criminally, pursuant to §17 of the Act, if the purpose is to avoid employers making voluntary a system of compulsory insurance.

We realize that our decision in this case may create a difficult situation for the Fund. But the remedy as we have just suggested, lies with the Legislature not with the courts, whose obligation is to apply the law as enacted by the Legislature.

The arguments set forth by the Manager, taken from the *Bordson* case, *supra,* to the effect that a contract exists between the employer and the State Insurance Fund from the

moment the employer files with the Fund his annual pay roll, which he is bound to file on or before July 15 of each year, is not applicable to the instant case, because the element of reciprocity, the *quid pro quo,* which could not exist in the present case if the construction given by the Manager were applided, is an indispensable requisite to every contract. This argument applies to the *Bordson* case because, according to the statute construed therein, the employer, at any time that he pays the premium, is considered from the date of payment an insured employer, and entitled from that time to the benefits of the insurance for which he has paid. But according to the construction which the Manager attempts to apply, if the employer pays after the semester is due, he is considered an uninsured employer with all its consequences, that is, he must pay compensation for accidents which occurred during the semester, even though it has paid for service which it has not received.

Before closing, we wish to state that we have carefully examined the cases of *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, and *State* v. *Hughes Electric Co.,* 199 N. W. (N. D.) 128, cited in the supplementary motion for reconsideration, and we do not agree that either of them is applicable to the present case. In the former a summary of the Workmen's Compensation Act of the State of Washington is set forth and the conclusion is reached that the same is constitutional, which question is not in controversy in the present case. In the latter, wherein an act is involved which as we have seen, is substantially different from ours, no question is discussed which sheds light on the question under consideration herein.

In his supplementary motion the Manager prays for a new hearing in the present case. It is true that when we decided the appeal on its merits, we did not have the benefit of the respondent's brief; but then, after we rendered our judgment, the Manager filed an elaborate motion for

reconsideration, followed by a similar one entitled "Supplementary Motion," and recently a lengthy brief, arguing the same questions raised in said motions. Although untimely filed, we are sufficiently acquainted with its point of view. But in view of the conclusion we have reached, after considering all the questions, we think that a new hearing would be of no avail. We deem it advisable to state that the case of *Rodríguez* v. *Industrial Commission* is hereby reversed.

The motion for reconsideration must be denied.