BEYER'S CEMENT, INC., a North Dakota Corporation, and Marvin Oliver Hagebock, Plaintiffs and Appellees,

v.

NORTH DAKOTA INSURANCE GUARANTY ASSOCIATION, a nonprofit unincorporated legal entity, Defendant and Appellant.

Civ. No. 870131.

Supreme Court of North Dakota.

Dec. 29, 1987.

David E. Walker of Sproul, Lenaburg, Fitzner & Walker, Valley City, for plaintiffs and appellees.

Patrick R. Morley of O'Grady, Morley & Morley, Ltd., Grand Forks, for defendant and appellant.

VANDE WALLE, Justice.

The North Dakota Insurance Guaranty Association (Guaranty Association) appealed from a declaratory judgment awarded to Beyer's Cement, Inc. (Beyer's), and Marvin Hagebock. We affirm.

On May 9, 1983, Marvin Hagebock was employed by Beyer's, a corporation located in Valley City, North Dakota. On that day Hagebock in the course of his employment was operating a tractor-trailer owned by Beyer's at the facilities of Canada Cement LeFarge, Ltd., in Winnipeg, Manitoba, Canada. During the unloading of the truck an employee of Canada Cement LeFarge, John Gudmundson, was injured.

Subsequently, Gudmundson applied for and received workers compensation benefits from the Workers Compensation Board of Manitoba (Board). In July of 1984 Gudmundson and the Board commenced a tort action against Beyer's and Hagebock in the courts of Manitoba. That action was partially one for subrogation by the Board for reimbursement of sums paid to Gudmundson, and the remaining portion sought general damages for Gudmundson.

At the time of the accident Beyer's carried a liability insurance policy issued by Iowa National Mutual Insurance Company (Iowa National). When the tort action was filed in Manitoba, Iowa National undertook to defend the action. However, in October of 1985 Iowa National was declared insolvent.

Thereafter the Guaranty Association undertook the defense of the entire action. The Guaranty Association acknowledged liability for any sum awarded individually to Gudmundson. But the Guaranty Association denied liability for any sum recoverable by the Board under its subrogation claim, arguing that such a sum is an amount due an "insurer" and thus is excluded from the "covered claims" for which the Guaranty Association is statutorily liable.

Beyer's then brought this action for a declaratory judgment to determine whether the Guaranty Association is statutorily obligated to pay the subrogation claim brought by the Board against Beyer's. The trial court granted judgment in favor of Beyer's.

The sole question before us is whether a claim made by the Workers Compensation Board of Manitoba against Beyer's is a claim made by an "insurer" and thus excluded from the Guaranty Association's liability.

The North Dakota Insurance Guaranty Association is governed by Chapter 26.1–42, N.D.C.C. The Guaranty Association is designed to provide financial resources when an insurer becomes insolvent and there is a claim for which the insolvent insurer was obligated to provide coverage. As is stated in Section 26.1–42–05(1)(a), the Guaranty Association is:

> "obligated to the extent of the covered claims of insolvent insurers existing (1) prior to the determination of insolvency and arising within thirty days after the determination of insolvency, or (2) before the policy expiration date if less than thirty days after the determination, or (3) before the insured replaces the policy or

causes its cancellation, if the insured does so within thirty days of the determination. The obligation includes only that amount of each covered claim in excess of one hundred dollars and less than three hundred thousand dollars. The association may not be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer."

A "covered claim" for which the Guaranty Association is obligated is defined as:

"an unpaid claim, including one for unearned premiums, within the coverage of an insurance policy to which this chapter applies issued by an insurer if the insurer becomes insolvent after July 1, 1971. The claimant or insured must be a resident of this state at the time of the insured event or the insured property must be permanently located in this state. *'Covered claim' does not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.''* [Emphasis supplied.] Sec. 26.1–42–02(3), N.D.C.C.

The Guaranty Association argues that the Board is an "insurer" and thus it is not obligated because a " 'Covered claim' does not include any amount due any ... insurer, ... as subrogation recoveries or otherwise." Sec. 26.1–42–02(3).[1]

We cannot agree with the Guaranty Association's characterization of the Manitoba Workers Compensation Board as an "insurer." The "covered claim" exclusions listed in the statute—for amounts due to a "reinsurer, insurer, insurance pool, or underwriting association"—contemplate individual members, and amalgamations of members, of the insurance industry. A workers compensation board is not a member of the insurance industry. Rather, it is a governmentally created board designed to provide for workers injured in the workplace regardless of fault.

Our interpretation of "insurer" is supported by comments to the National Association of Insurance Commissioners State Post–Assessment Insurance Guaranty Association Model Bill, from which North Dakota's legislation was adopted. House Ind. Bus. & Lab. Comm. Minutes (February 15, 1971). In comments concerning the definition of "covered claim," which is substantially similar to North Dakota's definition of "covered claim," the NAIC subcommittee drafting the model bill stated that it "does not feel that coverage should be extended to elements of the *insurance industry* which know or reasonably can be expected to know the financial condition of various companies." [Emphasis added.]

Thus the exclusions in the "covered claim" definition are meant to apply to the insurance industry. Because the Manitoba Workers Compensation Board is not a part of the insurance industry, it is not included within the term "insurer" under Section 26.1–42–02(3).

The Guaranty Association contends that the Board is an insurer because, it argues, workers compensation is a form of insurance. It refers this court to North Dakota statute and case law discussing workers compensation as insurance and attempts to draw an analogy between North Dakota and Manitoba because both utilize a workers compensation board for the operation of their workers compensation scheme. In particular, the Guaranty Association notes

1. At least two courts have considered whether a plaintiff who has recovered workers compensation benefits has a "covered claim" under statutes similar to North Dakota's Guaranty Association Act. Those courts reached different decisions. In *Ferrari v. Toto,* 383 Mass. 36, 417 N.E.2d 427 (1981), the court determined that because the plaintiff had received workers compensation benefits greater than the limits of the defendant's insurance policy and because the workers compensation insurer had a right to recover against any amount received by the plaintiff, the plaintiff's claim was not a "covered claim" under that State's insurance insolvency fund. In *Arnone v. Murphy,* 153 N.J.Super. 584, 380 A.2d 734 (1977), the court determined that even though the plaintiff had previously received a workers compensation award which created a statutory lien in favor of the compensation carrier, that did not take the plaintiff's claim outside the "covered claim" context of the New Jersey Guaranty Association Act. However, both of these cases are distinguishable from the case at hand because both cases involved workers compensation benefits provided by private insurance carriers. Therefore, we do not rely on either case.

that Section 65–01–05, N.D.C.C., uses the phrase "workmen's compensation insurance coverage" and that Section 65–04–27.1 refers to a "state workmen's compensation insurance fund." Thus the Guaranty Association argues that because the workers compensation system is referred to as insurance, the workers compensation board is an "insurer."

To further its position the Guaranty Association points to our prior case law which refers to the compliance of an employer with the workers compensation statutes as creating a contract. Specifically, the Guaranty Association relies on the following language in the court's opinion:

"... The employer had come in when the [workmen's compensation] act became operative, had furnished the required information and made payment of the estimated premium, and as a result a contract had been created by operation of law between the employer and the Bureau, precisely of the same nature that would have been created if the employer, in the absence of the statute, had entered into a contract with an insurance company under the same terms and provisions as embodied under the statute in consideration here. The beneficiary of such contract is in the first instance the employee rather than the employer." *Bordson v. North Dakota Workmen's Compensation Bureau*, 49 N.D. 534, 191 N.W. 839, 841 (1923).

We do not believe that the statutory references to insurance in the workmen's compensation laws nor the analogy made in *Bordson* between workers compensation and an insurance contract make the protections provided by a workers compensation board into insurance as contemplated in Chapter 26.1–42 governing the Guaranty Association. The funds provided by the workers compensation board are not insurance; they are workers compensation. These funds are derived from a statutorily created scheme designed to protect workers injured in the course of their employment. Sec. 65–01–01, N.D.C.C.

This court has stated that the fund created by the workers compensation board is not "an accident insurance fund except to a limited degree." *Sandlie v. North Dakota Workmen's Comp. Bureau*, 70 N.D. 449, 295 N.W. 497, 499 (1941). This might have been phrased to read that "the workers compensation fund is not an accident insurance fund, but it has some of the characteristics of an accident insurance fund." The workers compensation fund is like an accident insurance fund in that it is a fund made available when an injury occurs. However, the workers compensation fund is unlike an accident insurance fund in that (1) it is governmentally created and administered, (2) the injury must be work-related, and (3) because it is work-related questions of fault are irrelevant. Thus the workers compensation fund "is not a health or accident insurance fund." *Booke v. Workmen's Compensation Bureau*, 70 N.D. 714, 297 N.W. 779, 781 (1941).

Contrary to the Guaranty Association's contention, a workers compensation board is not an "insurer." Therefore, the Guaranty Association is obligated on the claim made by the Manitoba Workers Compensation Board against Beyer's. We note that this result is in conformity with the direction in Section 26.1–42–01, N.D.C.C., that the chapter governing the Guaranty Association "must be liberally construed."

The judgment is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.