THE AMERICAN RAILROAD Co. OF PORTO RICO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada, y SIMÓN ANGUEIRA, obrero muerto.

Núm. 250.—*Sometido:* Diciembre 7, 1942. *Resuelto:* Enero 27, 1943.

*Mariano Acosta Velarde, Federico Acosta Velarde* y *Donald R. Dexter,* abogados de la recurrente; *G. Atiles Moréu, A. de Jesús Matos* y *J. Correa Suárez,* abogados del Fondo del Estado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El patrono recurrente rindió el 9 de julio de 1941 su informe de jornales correspondiente al año de póliza 1940–41 y el 26 de noviembre de 1941 el Administrador del Fondo del Seguro del Estado le notificó que la cantidad que debería pagar por el primer semestre del año 1941–42 era la de $14,079.26, y le concedió hasta el 20 de diciembre siguiente para pagarla. El patrono no pagó dicho primer semestre hasta el 20 de enero de 1942. El 9 de marzo satisfizo el segundo, por la cantidad de $8,499.07.

El 6 de mayo de 1942, el Administrador Auxiliar del Fondo del Seguro del Estado notificó al patrono recurrente que todos los accidentes del trabajo por él reportados como ocurridos desde julio 1, 1941, hasta marzo 8, 1942, habían sido declarados no asegurados por estimar el Fondo del Seguro del Estado que el recurrente no era un patrono asegurado durante el indicado período. Recurrió el patrono para ante la Comisión Industrial y habiéndose señalado en dicha Comisión para el primero de junio de 1942 la vista del caso del obrero fallecido Simón Angueira, Núm. C. I. 15,861 (M), acaecida el 11 de febrero del año pasado, se notificó al patrono que en dicha vista se discutiría la apelación establecida por él contra la resolución del Fondo del Seguro del

Estado declarándolo patrono no asegurado durante el período antes indicado. Celebrada la vista y oídas las partes, la Comisión, con fecha primero de julio de 1942, dictó resolución por la que declaró que el patrono no estuvo asegurado desde el primero de julio de 1941 hasta el 8 de marzo de 1942, y que era responsable de todos los accidentes del trabajo acaecidos en su negocio durante dicho período.

El 28 de julio de 1942 el patrono solicitó la reconsideración de la resolución de primero de julio y explicando su tardanza en solicitarla, declaró que no tuvo conocimiento de que tal resolución se hubiese dictado hasta que el 21 de dicho mes uno de los abogados del patrono, el Lic. Donald R. Dexter, se personó en las oficinas de la Comisión para informarse si se había resuelto dicho caso, siéndole entregada entonces una copia de la resolución dictada el primero de julio de 1942. La Comisión, con fecha 29 de julio, desestimó la reconsideración, y refiriéndose al defecto de notificación alegado por el patrono, declaró que de acuerdo con sus records el mismo día primero de julio de 1942 se remitió por correo una copia de la referida resolución dirigida en la siguiente forma: "Lic. Mariano Acosta Velarde, American Railroad Co. of Porto Rico, P. O. Box 2552, San Juan, P. R."

Seis días después de denegada la reconsideración—el 4 de agosto de 1942—radicó la recurrente en este Tribunal su solicitud de revisión.

Prescribiendo como prescribe la sección 10 de la Ley de Compensaciones por Accidentes del Trabajo (Leyes de 1935, (1) pág. 251) que la reconsideración deberá ser solicitada dentro de los diez días siguientes al de la fecha "en que el interesado reciba la notificación de la decisión de la Comisión", y disponiendo también el artículo 11 de la misma ley, según fué enmendada por la núm. 121, aprobada el 2 de mayo de 1940 (pág. 729), que la revisión ante este Tribunal deberá solicitarse dentro del término de quince días siguientes a la notificación de la resolución denegatoria de la reconsidera-

ción, el Fondo del Seguro del Estado ha solicitado la desestimación del recurso por haberse establecido fuera de término, y por el motivo adicional de ser frívolo.

 Resolviendo en primer término la moción de desestimación diremos que no es aplicable a casos como el presente la regla sostenida en *Santana* v. *Salinas,* 54 D.P.R. 116; *Asencio* v. *Sucn. Rodríguez,* 49 D.P.R. 8, al efecto de que cuando la parte que notifica y la que se trata de notificar residen en el mismo término municipal la notificación por correo no es válida. En el presente caso no se trata de notificación entre partes sino de la notificación de una sentencia o resolución verificada por una junta administrativa de carácter cuasi judicial. La regla aplicable es la misma que si se tratase de una notificación de sentencia hecha por un tribunal de justicia. Pero como cuestión de hecho, la notificación no tuvo efecto hasta el día 21 de julio de 1942, resultando como resulta de los autos en este recurso por el *affidavit* del Lic. M. Acosta Velarde que su apartado de correos siempre ha sido el 326 y no el 2552 donde se dice por la propia Comisión que fué remitida la copia de la resolución, asegurando en dicha declaración el Lic. Acosta Velarde, al igual que los otros dos abogados de la recurrente en sus respectivos affidavits presentados en este Tribunal, que en ningún momento recibieron notificación alguna excepto la verificada personalmente al Lic. Dexter el 21 de julio de 1942.

██ Habiendo recibido la notificación de la resolución del primero de julio el día 21 de dicho mes, solicitado la reconsideración siete días después, y radicado la solicitud de revisión en este Tribunal el 4 de agosto, o sea seis días después de notificada la resolución denegatoria de la reconsideración, es obvio que tanto la moción de reconsideración ante la Comisión Industrial como el escrito de revisión en este Tribunal fueron radicados dentro de los términos de diez y quince días respectivamente que señala la ley, y no siendo frívolo el recurso, como nos proponemos demostrar en el

curso de esta opinión, procede desestimar la moción del Fondo del Seguro del Estado y entrar a considerar el recurso en sus méritos.

La primera cuestión que vamos a considerar es la de si el patrono en este caso era o no un patrono asegurado durante el primer semestre del año 1941-42. Prescribe la Ley de Compensaciones por Accidentes del Trabajo que la cuota que por concepto de seguro debe pagar cada patrono que haya estado asegurado en el año anterior, se computará tomando por base el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industria durante el año económico anterior, datos éstos que deberán consignarse en un estado por duplicado bajo juramento, que presentará el patrono al Administrador no más tarde del 15 de julio de cada año. Previendo la ley que el año de póliza principia el primero de julio de cada año y que por consiguiente el seguro quedaría en descubierto no sólo durante los primeros quince días de julio, si que también los que necesariamente se tomase el Administrador para estudiar y computar la cuota a base de dichos estados por duplicado, dispuso que cualquier patrono que haya estado cubierto por el Fondo del Estado a la terminación del año económico anterior y que estuviere cubierto a partir del día primero de julio del año corriente, lo estará también dentro del término del primero al quince de julio que se concede por la ley para archivar la nómina, siempre que la archivare dentro del indicado término de quince días, y dispuso además que el pago de la cuota dentro del plazo concedido por el Administrador da vida a la póliza con efecto retroactivo a la fecha en que hubiere radicado la nómina o estado por duplicado; y prescribe también que cualquier accidente que ocurriera después del 15 de julio será considerado como de patrono no asegurado a menos que el patrono hubiere verificado el pago dentro del término fijado por el Administrador.

En el caso de autos, el patrono presentó su nómina del año anterior el 9 de julio de 1941 y el Administrador fijó su cuota y le concedió hasta el 20 de diciembre de 1941 para pagar el primer semestre. El patrono no pagó durante el primer semestre sino el 20 de enero siguiente cuando ya había empezado el segundo. Siendo ello así, forzoso es concluir que la recurrente fué un patrono no asegurado durante el primer semestre, conforme alega el Administrador. Pero el Administrador entiende que tiene derecho a retener la cuota pagada y al mismo tiempo obligar al patrono a que pague las compensaciones de todos los accidentes de trabajo acaecidos en su negocio o industria durante el semestre en cuestión. Es evidente que el Administrador no está pretendiendo cobrar una obligación por servicios prestados, pues como él mismo sostiene, el patrono en este caso es un patrono no asegurado. Por consiguiente, no cabe duda de que el cobro de la así llamada "cuota" o "premio" sería en efecto una penalidad impuesta al patrono, y sabido es que las penalidades nunca se presumen. Mientras la legislatura no tenga a bien imponer expresamente la penalidad al efecto de que un patrono, aunque sea patrono no asegurado, deberá pagar las cuotas lo mismo que si hubiere sido asegurado, no habrá llegado el momento de resolver sobre la validez de esa penalidad.

■■ Resuelta esta primera cuestión, pasaremos a la segunda: ¿debe considerarse a la recurrente como patrono no asegurado en relación con un accidente que como el de este caso ocurrió el 11 de febrero de 1942, es decir, después de haberse pagado y hallarse en poder del Administrador desde el 20 de enero de 1942 la cuota del primer semestre, mucho mayor que la del segundo, y la cual, como hemos visto, no era aplicable a dicho primer semestre por haber sido satisfecha después de vencido el plazo y expirado el mismo? En esta segunda cuestión no tiene razón el Administrador. La cuota del segundo semestre debió pagarse el día 10 de enero de 1942 y no habiéndose hecho el pago hasta el 20 de dicho

mes, claro es y así lo admite la recurrente, que debe considerársele patrono no asegurado durante los días de enero que estuvo en descubierto el pago; pero de ahí en adelante, teniendo el patrono fondos en poder del Administrador, precisamente para atender a su seguro, dichos fondos deben aplicarse, hasta donde fuere necesario, al pago del segundo semestre y considerársele patrono asegurado, siguiendo el principio de justicia consignado en la máxima de equidad que dice que la equidad considera como hecho aquello que en justicia debió haberse hecho.

La doctrina establecida en el caso de *Montaner v. Comisión Industrial y Angel Suárez Hnos. Inc.*, 59 D.P.R. 396, es perfectamente compatible con la conclusión a que acabamos de llegar. Allí el patrono pagó durante el primer semestre, pero lo hizo después del plazo concedido por el Administrador, y se resolvió que de la fecha del pago en adelante tenía el *status* de patrono asegurado durante dicho semestre, pero que dicho pago no tenía efecto retroactivo por haberse verificado después de vencido el plazo concedido por el Administrador, y consecuentemente, a los efectos de los accidentes acaecidos antes del pago, debería considerársele como patrono no asegurado.

En el presente caso la Comisión resolvió que el patrono tenía el status de patrono asegurado a partir del 8 de marzo de 1942 en que pagó la cuota fijada para el segundo semestre, e invocó el caso citado; pero no tuvo en cuenta la Comisión que desde el 20 de enero de 1942 el Administrador tenía en su poder la cantidad indebidamente pagada para el primer semestre, que debía aplicársele al segundo, y que cubría con exceso la cuota de dicho segundo semestre.

*Procede, por lo expuesto, modificar las decisiones recurridas de la Comisión Industrial de forma que se declare a la recurrente patrono no asegurado durante el primer semestre del año de póliza 1941-42 y los primeros 19 días del segundo semestre del mismo año, y patrono asegurado a partir del 20 de enero de 1942.*

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SEÑOR DEL TORO
Febrero 3, 1943

A mi juicio la decisión de la Comisión Industrial recurrida se ajusta a la ley aplicable tal como fué interpretada por esta Corte en *Montaner* v. *Comisión Industrial,* 59 D. P.R. 396, 399, y debe en su consecuencia confirmarse.

Los hechos se exponen con claridad y precisión en el párrafo primero de la opinión de la mayoría, así:

"El patrono recurrente rindió el 9 de julio de 1941 su informe de jornales correspondiente al año de póliza 1940–41 y el 26 de noviembre de 1941 el Administrador del Fondo del Seguro del Estado le notificó que la cantidad que debería pagar por el primer semestre del año 1941–42 era la de $14,079.26, y le concedió hasta el 20 de diciembre siguiente para pagarla. El patrono no pagó dicho primer semestre hasta el 20 de enero de 1942. El 9 de marzo satisfizo el segundo, por la cantidad de $8,499.07."

Y aplicada la ley a esos hechos, es para mí inescapable la conclusión de que el patrono por su propia falta al pagar el primer semestre de su póliza cumplió con su obligación tan tarde que no dió efectividad al seguro durante ese período y al satisfacer el segundo fuera también del término legal pero dentro del semestre sólo le dió efectividad a partir del pago.

En el citado caso de *Montaner* v. *Comisión Industrial,* se dijo y resolvió que

"La Ley de Compensaciones por Accidentes del Trabajo, aprobada abril 18, 1935, leyes de ese año, página 251, estableció en Puerto Rico un sistema de seguro compulsorio y exclusivo, para compensar a los obreros y empleados que sufran lesiones, se inutilicen o mueran como consecuencia de accidentes del trabajo. De acuerdo con el artículo 18 de la ley, todo patrono que emplee más de cuatro obreros, 'estará obligado a asegurar a dichos obreros o empleados en el Fondo del Seguro del Estado la compensación que éstos deberán recibir por lesiones, etc.' Si faltare a esa obligación incurrirá en *misdemeanor* (artículo 17).

"El artículo 25 ordena al Administrador del Fondo que tase e imponga a todo patrono afectado por la ley *cuotas anuales* sobre el

importe total de los jornales pagados por el patrono a sus obreros durante el año anterior a la imposición de las cuotas. El mismo artículo dispone que la recaudación de las cuotas se hará por *semestres adelantados,* y provee además:

" ' ...*Si un patrono dejare de pagar* el total de las cuotas que le fueran impuestas légalmente *dentro del término que le señalare el Administrador,* éste podrá concederle una prórroga de treinta (30) días para que el patrono efectúe el pago, y *dicho pago será un requisito indispensable para que el Administrador pueda darle efectividad a cualquier póliza de seguro.*

" '

" '*Cualquier patrono sujeto a las disposiciones de esta Ley durante cualquier parte de un semestre deberá pagar las cuotas para dicho semestre completo,* teniendo derecho al reembolso, si lo hubiere, que se prescribe en el siguiente artículo;...' (Itálicas nuestras.)

"El artículo 26 determina el procedimiento que deberá seguir el administrador al finalizar cada año económico, para liquidar las pólizas y hacer un reajuste de las cuotas. Si la nómina del último año fuera menor que la del año anterior, que fué la que sirvió de base para la fijación y cobro de cuotas, el administrador reembolsará al patrono la diferencia; y en el caso contrario le cobrará la cuota adicional necesaria.

"El artículo 27 dispone entre otras cosas, que el seguro de cada patrono comenzará a regir inmediatamente después del archivo de la nómina o estado por duplicado, 'acompañado del importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el administrador'; y

" ' ...*Disponiéndose,* que cualquier accidente que ocurra antes de verificarse el pago, será considerado *como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo del Estado, en los cuales casos el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado, en la oficina del Administrador.'* (Itálicas nuestras.)

"Las precedentes disposiciones estatutarias son de tan perfecta claridad, que su aplicación a los hechos de este caso no ofrece dificultad alguna. El patrono radicó a tiempo, en julio 15, 1939, el estado de jornales y sueldos pagados durante el año económico anterior, 1938–39. El administrador en cumplimiento de su deber le tasó la cuota para 1939–40, y le concedió hasta septiembre 10, 1939, para el pago del primer semestre. El asegurado no solicitó prórroga

del término señalado por el administrador, dejó expirar dicho término, y no pagó el importe del primer semestre hasta 45 días después de su expiración, o sea el 24 de octubre de 1939.

"Considerando los hechos y circunstancias que hemos expuesto y las disposiciones legales a los mismos aplicables, debemos resolver y resolvemos: que siendo el pago de las cuotas dentro del término señalado por el administrador un requisito indispensable para que el administrador pueda darle efectividad a cualquier póliza de seguro, la póliza en el caso de autos empezó a regir el 24 de octubre, 1939, cuando se hizo el pago del primer semestre; que habiendo ocurrido el accidente en 23 de agosto de 1939, antes de verificarse el pago del primer semestre de 1939-40, y no habiéndose verificado dicho pago dentro del término fijado por el administrador, el cual expiró en septiembre 10, 1939, dicho accidente es y debe ser considerado como uno de patrono no asegurado; y, por último, que el patrono no tiene derecho al reembolso que solicita, primero, porque de acuerdo con el artículo 25, supra, el pago de las cuotas debe hacerse por semestres completos, y, segundo, porque el único reembolso que el administrador está facultado para hacer es el que de acuerdo con el artículo 26 deberá hacerse al final de cada año para liquidar las pólizas y reajustar las cuotas.

"El patrono en el presente caso pudo haber puesto en vigor su póliza desde la fecha de radicación de la nómina efectuando el pago de las primas dentro del término señalado por el administrador o de la prórroga que éste le hubiese concedido. No lo hizo así, y debe por tanto sufrir las consecuencias de su demora en hacer el pago." *Montaner* v. *Comisión Industrial*, 59 D.P.R. 396, 399.

Todo lo dicho debe a mi juicio sostenerse porque constituye la recta interpretación de la ley. Y sosteniéndolo no cabe resolver este caso en los términos en que lo resuelve la mayoría de los jueces de la Corte.

Se trata de un seguro anual compulsorio cuya cuota debe satisfacerse por semestres adelantados. El pago de las cuotas y las penalidades fijadas por la propia ley son cosas independientes, distintas. El pago procede siempre. Así lo entendió el propio patrono. Cuando en enero 20, 1942, después de la prórroga que se le concediera hasta diciembre 20, 1941, hizo su primer pago, lo asignó como tenía que hacerlo al primer semestre y a ese primer semestre fué aplicado por

324

el Fondo del Seguro del Estado. Y cuando en marzo 9 de 1942, también tardíamente, satisfizo el segundo semestre, al segundo semestre fué aplicado.

Que cumplida su obligación en esa forma sólo produciría el efecto de dar vida a su póliza a partir de marzo 9, 1942, tenía él que saberlo dados los términos en que está redactada la ley.

Aquí no se trata de un seguro comenzado en el segundo semestre de un año económico, de un nuevo negocio, si que de un patrono que venía asegurado de años anteriores, que rindió su informe de jornales en julio 9, 1941, o sea a principios del año económico como ordena la ley, de conformidad con cuyo informe se le calculó la cuota del seguro que estaba obligado a constituir a favor de sus obreros, cuota que pagó fuera del término legal y que por tanto sólo produjo el efecto de cumplir la obligación de pago pero no el de dar efectividad a la póliza por el período en que quedó incumplida, que es una de las penalidades impuestas por la ley.

EN MOCION DE RECONSIDERACION

Marzo 10, 1943

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Administrador solicita ahora la reconsideración de la sentencia en este caso dictada, y fundamentando su moción alega que erramos al resolver:

1. Que el cobro de la cuota a un patrono por el período para el cual se le declaró no asegurado, constituye una penalidad.

2. Que un patrono regular de los comprendidos en la ley puede, al amparo de los artículos 18, 25, 26 y 27 de la vigente Ley de Compensaciones por Accidentes del Trabajo, mantener una póliza por un solo semestre, no obstante hacer negocios por todo el año.

Es innecesario repetir ahora los hechos del caso. Bastará referirnos a la opinión que sirvió de base a la sentencia. Sin embargo, para la más fácil inteligencia de los puntos envueltos, parece conveniente puntualizar brevemente las cuestiones realmente resueltas, a saber:

(a) Que cuando un patrono comprendido en las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo deja de pagar dentro de un semestre la cuota o prima correspondiente, ese patrono es un patrono no asegurado durante dicho semestre, y el Administrador se ajusta a la ley al así declararlo.

(b) Que la facultad del Administrador reconocida en el párrafo (a) que precede, no se extiende hasta el extremo de poder exigir al patrono no asegurado que asuma todas las responsabilidades que la ley le impone como tal y al mismo tiempo que pague la prima como si en realidad hubiera estado asegurado y recibido los beneficios del seguro.

(c) Que el premio o prima impuesto por la ley es el precio que paga el patrono a cambio del seguro que recibe, y no recibiendo el beneficio del seguro, el exigir su pago en tales condiciones, equivaldría a adicionar a la ley una penalidad que el legislador no tuvo a bien imponer, penalidad que no puede inferirse del texto de la ley, porque las penalidades nunca se presumen.

(d) Que habiendo satisfecho el patrono el 20 de enero la cuota correspondiente al primer semestre que venció el 31 de diciembre y no pudiendo aplicarse dicho pago al primer semestre por no haber recibido el patrono servicio alguno durante dicho período, y toda vez que el pago verificado excede de la cantidad correspondiente al premio del segundo semestre, en equidad deberá aplicarse dicha cantidad al pago de dicho segundo semestre, por lo que procedía

considerar al patrono como asegurado a partir del 20 de enero hasta el 30 de junio siguiente; y

(e) Que habiendo ocurrido el accidente de este caso el 11 de febrero y habiéndose verificado el pago el 20 de enero, el accidente está cubierto por el seguro del Fondo del Estado.

■ Impugnando las conclusiones de derecho que acabamos de exponer, empieza por decir el abogado del Administrador que la cuestión suscitada por la recurrente no era nueva ni a su juicio estaba abierta a consideración en esta jurisdicción, porque este mismo tribunal, en el caso de *Sucesión Rodríguez* v. *Comisión Industrial,* 54 D.P.R. 289, resolvió lo contrario a lo que ahora se resuelve, a pesar de que los hechos eran sustancialmente iguales a los del presente caso.

A esto debemos replicar que si bien la doctrina de *stare decisis* obliga a un tribunal a seguir sus decisiones en casos posteriores a fin de lograr la estabilidad y certidumbre que deben existir en la ley, sin embargo esa doctrina no llega al extremo de declarar que la opinión de un tribunal tenga el alcance de un dogma que deba seguirse ciegamente aun cuando el tribunal se convenza posteriormente que su decisión anterior es errónea. Como insinuamos antes, el propósito inspirador de la doctrina de *stare decisis* es lograr estabilidad y certidumbre en la ley, mas nunca perpetuar errores.

■ Concedemos que la doctrina del presente caso está en manifiesto conflicto con la del caso de *Sucesión Rodríguez* v. *Comisión Industrial,* supra. Por consiguiente, la cuestión a resolver es cuál de las dos es la correcta.

El razonamiento en el caso de *Sucesión Rodríguez* está predicado en un silogismo cuya premisa mayor es falsa, y por consiguiente la consecuencia tiene que ser necesariamente falsa. En el referido caso se parte de la base de que el seguro es anual, aunque se paga por semestres adelantados; y si la póliza es anual, es claro que quien quiera acogerse a sus beneficios tiene que pagar la cuota anual com-

pleta y no puede fraccionar el seguro pagando la prima del segundo semestre sin satisfacer también la del primero. Es verdad que la ley, en su artículo 25, habla de *cuotas anuales,* pero en Derecho los atributos que adornan una cosa, y no el nombre que quiera dársele, son los que determinan su verdadera naturaleza. Y del contexto de la propia ley claramente resulta que para todos sus efectos prácticos, la póliza, aunque se diga que es anual, como se sostuvo en el caso de *Sucesión Rodríguez,* es sencillamente semestral. Así, pues, un patrono que paga en tiempo el primer semestre, pero antes del primero de enero de cualquier año vende o liquida su negocio, queda excusado del pago de la cuota para el segundo semestre, de enero a junio, dando el aviso y sometiendo la prueba que exigiere el Administrador, de que no estará sujeto a las disposiciones de la ley, durante dicho segundo semestre. Artículo 25. Prescribe el mismo artículo que cualquier patrono sujeto a las disposiciones de la ley durante cualquier parte de un semestre, deberá pagar la cuota para dicho semestre completo, teniendo derecho al reembolso, si lo hubiere, que se prescribe en el artículo 26, "disponiéndose que en dichos casos los reembolsos podrán efectuarse *a la terminación del semestre* para el cual fueron pagadas dichas cuotas."

Si el pago fuera en realidad anual, el asegurado no tendría derecho a devolución de parte alguna del premio anual bajo ninguna circunstancia y no podría pagar el primer semestre y excusarse del pago del segundo, ni podría satisfacer tan sólo una parte de un semestre. La doctrina del caso de *Sucesión Rodríguez,* supra, conduce al absurdo de que una persona que empieza a ser patrono desde el día primero de enero en adelante, no puede obtener seguro pagando tan sólo el semestre de enero a junio, y se le exige que pague todo el año completo, arguyéndose que la póliza es anual y que siéndolo, tiene que pagar la prima de todo el año aunque no haya recibido seguro durante el primer semestre.

Sin embargo, como hemos visto, la propia ley permite al patrono que lo haya sido durante el primer semestre, eximirse del pago de la prima del segundo, avisando con anterioridad al día primero de enero que no ha de ser patrono durante dicho semestre. En este último caso, a los efectos legales el seguro resulta semestral, pues no se le exige el pago de toda la anualidad. Si en realidad el seguro fuese anual, el patrono en ningún caso podría obtener seguro pagando la prima de un semestre o parte de un semestre solamente, como no puede un contribuyente eximirse del pago del segundo semestre de contribuciones o pretender que se le reintegre parte de lo pagado en un semestre porque haya dejado de ser dueño de la propiedad o se haya destruido ésta, o porque durante una parte del año contributivo se efectúe algún cambio que le exima, de ahí en adelante, del pago de contribuciones. Ello es así porque la contribución, a pesar de que se paga por semestres adelantados, es verdaderamente anual y no semestral. *Asociación de Maestros* v. *Sancho Bonet, Tesorero,* 54 D.P.R. 536; *Roig* v. *Sancho Bonet, Tesorero,* 54 D.P.R. 649.

El caso de *Bordson* v. *North Dakota Workmen's Compensation Bureau,* 191 N.W. 839, citado por el Administrador, no sostiene su contención. La ley de North Dakota, a pesar de tener el Fondo del Estado, es sustancialmente distinta a la nuestra. Prescribe aquella ley que el patrono hará *un solo pago para todo el año.* Si el premio que debe pagar un patrono excede de $100, tiene la opción de pagarlo en dos plazos semestrales iguales o en cuatro trimestres también iguales, a su conveniencia; pero los pagos diferidos devengarán intereses a razón del 5 por ciento anual y el patrono deberá prestar una fianza satisfactoria para garantizar el pago de dichos plazos, así como el de las penalidades y costas judiciales en caso de no pagarlos a su vencimiento. Prescribe además dicha ley que en caso de que el patrono no satisfaga el pago anual en la fecha fijada para ello, se le con-

siderará patrono no asegurado durante el período anterior al pago; pero desde la fecha en que el pago se verifique, ya sea voluntariamente, ya en satisfacción de la sentencia que se dicte en la acción que contra él deberá interponer el Procurador General en cobro del premio, *desde la fecha del pago en adelante, repetimos, y hasta un año después, el patrono queda protegido por la póliza, de manera que en ninguna ocasión dentro de dicha ley el Fondo del Estado cobra un premio sin dar seguro;* como sucedería en Puerto Rico si aceptásemos la interpretación del caso de *Sucesión Rodríguez,* supra. En el referido caso de *Bordson,* el patrono pagó su cuota anual completa dos o tres días después de vencido, bajo circunstancias que equivalían a una renuncia (*waiver*) por parte del *Bureau* del derecho a exigir el pago en la fecha fijada, y en la acción instituída por los dependientes del obrero contra el Fondo en cobro de la compensación, se revocó la sentencia de la corte inferior que había exonerado al *Bureau,* se hizo a éste responsable de la compensación, y se devolvió el caso para ulteriores procedimientos no inconsistentes con los principios expuestos en la opinión.

El hecho de que los premios o cuotas se cobran para cada clasificación a base de los riesgos de la clasificación a que el patrono pertenece, más bien que a base de la experiencia individual del patrono, argumento que esgrime el Administrador con el fin de demostrar que la póliza es anual y no semestral, no resiste el más ligero análisis a la luz de las disposiciones de la propia ley. ¿No hemos visto, acaso, que un patrono que ha pagado la cuota del primer semestre puede excusarse de pagar la del segundo, notificando al Administrador, antes del primero de enero siguiente, que ha cesado de ser un patrono comprendido en la ley? ¿No va más lejos aun ésta al disponer que aunque el patrono sólo está comprendido en sus disposiciones durante una parte del semestre, viene obligado a pagar el premio en su totalidad, sin perjuicio de que después de expirado el semestre se le de-

vuelva por el Administrador la parte de la cuota correspondiente al período durante el cual no estuvo sujeto a la ley? Ese método de determinar la cuota o prima no cambia el carácter del pago, que continúa siendo por servicios prestados. Esta base actuarial se usa en todos los sistemas solventes—tanto públicos como privados—en toda clase de seguros, y no afecta en forma alguna la naturaleza de la póliza.

Los casos de *Montaner* v. *Comisión Industrial y Angel Suárez & Hno.*, 59 D.P.R. 396, y *Sucesores de José González & Cía.* v. *Comisión Industrial,* resuelto dos días antes que el que nos ocupa (ante, pág. 306), no están en conflicto con el presente. El de *Angel Suárez,* supra, se distingue en la opinión del caso de autos, y se dice que es perfectamente compatible con la conclusión a que llegamos en el presente caso, porque allí el patrono pagó dentro del primer semestre, pero después del plazo fijado por el Administrador, y se resolvió que el pago de la cuota tiene, en tales condiciones, efecto prospectivo, es decir, que el seguro empieza a regir desde la fecha del pago y por consiguiente un accidente ocurrido antes de dicha fecha no está protegido por la póliza. No existe conflicto alguno entre este caso y el de *Sucrs. de José González & Cía.* En verdad fué el Administrador quien sostuvo en dicho caso la contención de que aunque la ley disponía una póliza por un año, ésta quedaría "suspendida"—lo que equivale a decir prácticamente que no existiría—por un semestre de dicho año, bajo ciertas circunstancias, una de las cuales es dejar de pagar a su debido tiempo la prima del segundo semestre. Aparentemente, el Administrador desearía que considerásemos la póliza como una semestral sólo cuando tal interpretación redundase en beneficio del Fondo, y que en los demás casos sostuviésemos que la póliza es anual tanto de nombre como en su efecto legal. Pero tal como está redactado el estatuto en la actualidad—quizá desgraciadamente—resulta un arma de dos filos y en algunas ocasiones la póliza resulta semestral en su efecto legal, en perjuicio

del Fondo. Como dijéramos antes, la Ley de Compensaciones a Obreros impone penalidades por no asegurarse. En su artículo 17, bajo el título "Sanción Penal por no Asegurarse", lo declara *misdemeanor,* castigable con multa mínima de $25 y máxima de $500, o prisión mínima de 15 días y máxima de 6 meses, o con ambas penas, y en el artículo 15 establece una especie de sanción civil al autorizar al obrero a demandar al patrono no asegurado en reclamación de daños y perjuicios, impidiendo al patrono poder alegar las defensas de negligencia contribuyente, asunción de riesgo, etc., que podrían levantarse en cualquier acción ordinaria, y al mismo tiempo permitiendo al obrero obtener el embargo de bienes bastantes del patrono sin prestación de fianza, incluyendo en el embargo una cantidad razonable para honorarios de abogado que en todo caso deberá conceder la corte si declara con lugar la demanda.

Pero en ninguna parte de la ley se impone la penalidad de que el patrono venga obligado a pagar la cuota por un semestre durante el cual no ha estado asegurado en ningún momento y al mismo tiempo tenga que pagar todos los accidentes ocurridos durante dicho semestre, a pesar del pago de la cuota. Cuando el legislador tenga a bien imponer esa penalidad, estaremos en condiciones de aplicar la doctrina del caso de *Sucesión Rodríguez;* pero mientras tal penalidad no se imponga, debe, a nuestro juicio, subsistir la doctrina de este caso, imponiendo al patrono las penalidades expresamente provistas en la ley, es decir, declararlo para dicho semestre patrono no asegurado, con todas sus consecuencias legales, y perseguirlo criminalmente de acuerdo con la sección 17 de la ley, si es que se quiere evitar que los patronos puedan de esa forma convertir en voluntario el seguro compulsorio.

Concedemos que nuestra decisión en este caso puede crear una situación difícil para el Fondo. Pero el remedio, como acabamos de sugerir, debe buscarse en la Legislatura y no

en las cortes de justicia, cuya obligación es aplicar la ley tal y como ha sido redactada por el legislador.

El argumento que expone el Administrador, tomado del caso de *Bordson,* supra, al efecto de que entre el patrono y el Fondo del Seguro del Estado existe un contrato desde el momento en que el patrono radica en las oficinas del Fondo su nómina anual, que debe radicar en o antes de julio 15 de cada año, no es aplicable al presente caso, sencillamente porque es requisito indispensable de todo contrato el elemento de la mutualidad, el *quid pro quo* que de aplicar la interpretación del Administrador, no podría existir en el presente caso. Ese argumento es pertinente en el caso de *Bordson,* porque de acuerdo con la ley que allí se interpreta, el patrono en cualquier momento que satisfaga el premio es considerado, desde la fecha del pago, como patrono asegurado y recibe desde entonces los beneficios del seguro que ha pagado. Pero de acuerdo con la interpretación propuesta por el Administrador, si el patrono paga después de vencido el semestre, es considerado patrono no asegurado con todas sus consecuencias, es decir, debe pagar todas las indemnizaciones que ocurran durante el semestre, no obstante haber pagado por un servicio que no ha recibido.

Antes de terminar queremos hacer constar que hemos leído cuidadosamente los casos de *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, y *State* v. *Hughes Electric Co.,* 199 N. W. (N. D.) 128, citados en la moción complementaria sobre reconsideración, y no vemos que ni uno ni otro tengan aplicación alguna al presente. En el primero se hace un resumen de la Ley de Compensaciones a Obreros del Estado de Washington, y se concluye que es constitucional, cuestión que no está en controversia en el presente. En el segundo, donde se estudia una ley que como hemos visto es sustancialmente distinta de la nuestra, ninguna cuestión se discute que pueda dar luz a la aquí debatida.

El Administrador solicita en su moción complementaria que se celebre una nueva vista en el presente caso. Es verdad que al resolver el recurso en su fondo no tuvimos el beneficio del alegato del recurrido; pero luego de dictada nuestra sentencia el Administrador presentó una moción de reconsideración extensamente argumentada, seguida de otra similar que tituló "Moción Complementaria", y últimamente un extenso alegato argumentando sobre las mismas cuestiones suscitadas en las referidas mociones. Aunque fuera de tiempo, hemos sido suficientemente informados de sus puntos de vista. Pero dada la conclusión a que hemos llegado después de considerar todas las cuestiones, opinamos que sería inútil la celebración de una nueva vista. Parece conveniente consignar que el caso de *Sucn. Rodríguez* v. *Comisión Industrial* queda revocado.

*Procede denegar la reconsideración solicitada.*